ORSON MILES, APPELLANT *v.* HEBER M. WELLS, JAS. T. HAMMOND, BYRON GROO, WESLEY K. WALTON, ISAAC C. McFARLAND, T. D. REES, FISHER S. HARRIS, AS MEMBERS OF THE STATE BOARD OF LAND COMMISSIONERS, AND THE STATE BOARD OF LAND COMMISSIONERS, RESPONDENTS.

STATUTORY CONSTRUCTION — LANGUAGE USED — LEGISLATIVE INTENT. RULE OF STATUTORY CONSTRUCTION — CHAP. 64, S. L. 1899—CONSTRUCTION. STATE BOARD OF LAND COMMISSIONERS — DUTIES — UNDER SEC. 16, CHAP. 64, S. L. 1899. APPLICATION FOR LANDS—UNDER CHAP. 64, S. L. 1899 — WHEN APPLICANT ACQUIRES A VESTED RIGHT. MANDAMUS—LACK OF JURISDICTION IN DISTRICT COURT — TO CONTROL LAND BOARD'S DISCRETIONARY POWERS.

*Statutory Construction—Language Used—Legislative Intent.*
When the language of a particular provision of a statute is ambiguous, construction may be resorted to in order, if possible, to ascertain the true intention of the legislature, but where there is no ambiguity, the language must be taken as

the expression of the legislature's intention, unless other provisions of the statute clearly show that the language was used in a sense different from its natural and ordinary meaning.

*Rule of Statutory Construction.*

A court will not construe a particular provision of a statute, so as to neutralize or modify other provisions if any other construction of the particular provision is at all tenable.

*Chap. 64, S. L. 1899—Construction.*

There are no provisions in Chap. 64 of the Session Laws of 1899 which indicate that the word "may" occurring in the sentence "The board may select and contract to sell," etc., in Sec. 16 of said act, was used in any other than its ordinary sense; to have used it otherwise would have neutralized the plain provisions of some, and materially modified others, of the sections of the act.

*State Board of Land Commissioners—Duties—Under Sec. 16, Chap. 64, S. L. 1899.*

Section 16, of Chap. 64, Session Laws of 1899, does not make it the duty of the State Board of Land Commissioners to select and contract land applied for, nor to fix a uniform price for all lands selected.

*Application for Lands—Under Chap. 64 S. L. 1899—When Applicant Acquires a Vested Right.*

Under Chap. 64 Session Laws of 1899 after an application for lands is made, until the selection is made and the price to be paid, and the time in which the deferred payments shall be made are fixed by the board, and assented to by the applicant, and a contract of sale containing the stipulation agreed upon is executed. the applicant has no vested rights whatever.

*Mandamus—Lack of Jurisdiction in District Court—To Control Land Board's Discretionary Powers.*

A court has no jurisdiction to direct, by mandamus, how the discretionary power, vested in the State Board of Land Commissioners by chapter 64, Session Laws of 1899, shall be exercised.

( Decided May 7, 1900. )

*Messrs. King Burton & King*, for appellant.

*Hon. A. C. Bishop*, Atty. General, for respondent.

BASKIN, J.

The plaintiff, by petition, applied to the court below to issue a writ of mandate, directed to the defendants, and each of them commanding them to refrain from selecting certain lands for the purposes of public sale or lease, and to receive the application made by the petitioner for the selection of said lands, and also to select the same pursuant to the petitioner's application, and to contract to sell the same at private sale to the petitioner for the sum of $1.50 per acre, and to receive the sum of 25 cents per acre tendered by the petitioner; and also commanding them and each of them to make no selection of said lands or any part thereof except pursuant to the application of the petitioner, and for the purpose of selling them to the petitioner at private sale pursuant to his said application; and also commanding them to show cause before this court at the court room thereof in the city of Salt Lake, and in the State aforesaid, on the 7th day of October, 1899, at 10 o'clock a. m., and to show cause, if any they have, why they have not done so. Your petitioner prays for general relief."

An alternative writ of mandate was granted and served upon defendants.

A demurrer was interposed to the petition by the defendants on the ground that the same did not state facts sufficient to constitute a cause of action, and that the court had no jurisdiction of the subject-matter.

Without setting out in detail the allegations of the petition, it is sufficient to state that it is, in substance, alleged that the plaintiff, a citizen of the United States, and a

resident of Cache county, in this State, on the 2d day of October, 1899, in due form, made a written application to the State Board of Land Commissioners, of which the defendants were the members, as follows, "for the selection by the said Board of the following described tracts of land, to-wit: (Then follows description by metes and bounds of various tracts of lands, aggregating 2,400 acres) which said lands were and still are public and unoccupied public domain of the United States and subject to selection by defendants for said state, in satisfaction of the grants made as aforesaid." And in said application the plaintiff requested and demanded said Board to select said lands, and to contract and sell the same to him at private sale at $1.50 per acre, that being the price fixed by the Board to be paid by persons applying for lands to be selected by the Board in satisfaction of the grants of public lands made by Congress to the State of Utah; that the plaintiff tendered to the Board twenty-five cents per acre for said lands to be applied on the first payment, and "demanded a contract with said defendants by which the balance of said purchase price should be paid in ten equal yearly payments," and that the Board refused to receive the money so tendered, and refused, and still refuses, to select said lands and contract and sell the same to the plaintiff at private sale, or at all.

Prior to the argument of the demurrer, the following minutes of said board, by agreement of the parties to the action, were added to and made a part of the petition: "Commissioner Hammond moved that the secretary be directed to notify each person upon whose application land had been selected that the board is now prepared to enter into a contract to sell the land so selected to the applicants at $1.50 per acre in all cases, except where the applicants have agreed to pay more than that price, and

in such cases the price to be that stated in the application; and that the applicants have thirty days after the receipt of such notice within which to enter into the contract and make a deposit. Carried. Adopted May 4, 1899.

"Commissioner MacFarland moved that the executive committee be authorized to enter into private contracts with the citizens to sell to them lands which have been selected on their application, when the board is not in session.

"Commissioner Harris moved that all of the applications for the selection of lands by the State be denied where the price offered by the applicants is less than $1.50 per acre or the land applied for is surveyed. Carried.

"By order of the State Board of Land Commissioners of July 6, 1899."

Sec. 1, Art. 20, Const., provides that "All lands of the state that have been or may hereafter be granted to the state by Congress * * * shall be held in trust for the people, to be disposed of as may be provided by law."

The legislature passed an act (Ch. 64 of the Laws of 1899, p. 85), among the sections of which are the following, which have a bearing upon the questions involved:

"Sec. 5. The board of land commissioners shall have the discretion, management, and control of all lands heretofore, or which may hereafter, be granted to this state by the United States government, or otherwise, for any purpose whatever, except lands used or set apart for public purposes or occupied by public buildings, and shall have the power to sell or lease the same for the best interests of the state and in accordance with the provisions of this act and the constitution of the state.

"Sec. 7. The board shall cause all the public lands now owned by the State, or lands the title to which may hereafter be vested in the State, to be selected and registered, and thereafter sold or leased. * * *

"Sec. 9. The board shall cause the State lands and the improvements thereon to be appraised or reappraised at such times as it may deem for the best interests of the State. * * *

"Sec. 14. In all counties where the public lands or any portion thereof, have been appraised, the board shall, when deemed conducive to the best interest of the State, attend in person or by agent, at such time as the board shall direct, and offer at public auction at the courthouse of the county, and sell to the highest bidder all or any of the appraised and unsold and unleased lands situated in the county where such public auction is held. * * *

"Sec. 16. Whenever any citizen of the United States or person who has declared his intention to become such, shall make application in writing for the selection by the State of any tract of land in satisfaction of any grant to the State, the board may select and contract to sell the same at private sale to the person requesting the selection thereof at a price to be fixed by the board, not less than one dollar per acre; provided that at the time of making such contract twenty-five cents per acre shall be deposited with the board to be applied as the first payment on such land after the same is patented to the State, and the remainder of the purchase price shall be paid in not to exceed ten equal yearly payments. All lands heretofore selected by the board upon the application of citizens may be sold to the applicants under the provisions of this section.

"Sec. 18. The board may sell the timber on the unsold and unleased lands of the State, except as provided in section 38 of this act, in the same way as it may sell State lands, but payment for such timber must be made as provided in Sec. 21 of this act.

"Sec. 21. No timber or lands on which timber forms

an appreciable part of the value of such lands shall be sold except for cash, unless the purchaser shall secure to the State the payment of the full purchase price by giving, at the time of purchase, and execution of notes for purchase, a good and sufficient bond running to the State for double the value of the timber on said lands; said bond to be in such form as the board may direct and subject to its approval.

"Sec. 36. Any portion of the public lands of this State, excepting such lands as are occupied by *bona fide* settlers who have a preference right of purchase, as hereinbefore provided, may be subdivided into lots, and sold as provided in this act, the board being satisfied that by a subdivision of any tract into lots, the sale of the same could be made for a greater amount than if sold in legal subdivisions as designated United States surveys.

"Sec. 38. The board shall set apart and reserve from sale such tracts of timber lands and the timber thereon, as may, in the opinion of the board, be required to preserve the forests of the State, prevent the diminution of the flow of rivers and aid in the irrigation of the arid lands."

The appellant predicates his alleged rights in the premises upon the provisions of Sec. 16 and claims by virtue of its provisions, that when he made application for the selection of said lands and tendered to the Board, as the first payment for the same, twenty-five cents per acre, he acquired the absolute right to have selected and to purchase said lands at the price of $1.50 per acre, and to pay the balance of the purchase money in ten equal yearly payments, and that it became and was the mandatory duty of the Board to make a selection of said lands and enter into a contract of sale to him of said lands, at the price and on the terms mentioned.

When the language of a particular provision of a stat-

ute is ambiguous, construction may be resorted to in order, if possible, to ascertain the true intention of the legislature, but where there is no ambiguity, the language must be taken as the expression of the legislature's intention, unless other provisions of the statute clearly show that the language was used in a sense different from its natural and ordinary meaning.

In *Minor, et al.* v. *The Merchants Bank of Alexandria*, 1 Pet. 64, Justice Story, in the opinion, said: "The ordinary meaning of the language (of a statute) must be presumed to be intended, unless it would manifestly defeat the object of the provisions."

The court will not construe a particular provision of a statute, so as to neutralize or modify other provisions if any other construction of the particular provision is at all tenable.

It is stated in Sutherland on Stat. Const., Sec. 460, that "Where statutes are couched in words of permission, or declare that it shall be lawful to do certain things, or provide that they may be done, their literal signification is that the persons, official or otherwise, to whom they are addressed, are at liberty or have the option to do those things or refrain, at their discretion."

The language of Sec. 16, in this regard, is, "The board may select and contract to sell" etc. Therefore unless the term "may" is clearly shown by context of said section or by other provisions of the act to have been used in the sense of must, or if by giving to it that meaning other provisions of the statute would be neutralized, then the natural and ordinary meaning of that word must control, and said board may at their option, select and contract to sell the lands donated to the State, and applied for by a citizen, or refrain from doing so.

There are no provisions of the statute which indicate

that that term was used in any other than its ordinary sense. To have done so would have neutralized the plain provisions of some, and materially modified others, of the sections of the statute hereinbefore cited.

Under the construction contended for by appellant the board could not exercise the power expressly conferred upon them by Secs. 5, 7, 9, 14, to lease or to sell at public auction all or any of the appraised, unsold and unleased lands, when deemed by the board to be conducive to the best interests of the State to do so.

If an application should be made for lands, the timber on which forms an appreciable part of its value, in that case, such a construction would entirely neutralize the provisions quoted from Secs. 18, 21, and 28. It would prevent the subdivision into lots, as provided in Sec. 36. In short, it would in many instances, prevent the board from resorting to the methods which of those explicitly authorized by the legislature, would in the judgment of the board best subserve the interests of the State.

That it is not made the duty of the board to make selection and contract the land applied for under Sec. 16, is apparent from other provisions of that section. The sale of the land applied for in each instance, is to be made *at a price to be fixed by the board.*

Unless the parties to this transaction were under mutual obligations, none existed. If the board, as contended by appellant, becomes bound whenever an application and tender are made, to make selection and contract for sale of the lands applied for, then the applicant is also bound to pay the price fixed by the board.

It is, however, claimed by the appellant that the price for the land applied for in this case was fixed at $1.50 per acre by the action of the board in the minutes, added by agreement to the petition. The price fixed by these

minutes in express terms was confined to all selections which had already been made, except in those cases where the applicants had agreed to pay more than that price. The statute does not require the board to fix a uniform price·for all lands selected, but as the respective applications are frequently for lands of greatly different values, by reason of their different locations, quality of soil, irrigating facility, and the difference in the quality, quantity and value of the timber on each tract, it is evident, not only from Sec. 16, but from other sections of the statute, that it was the intention of the legislature to vest the board with authority to fix the price to be paid by each applicant for the lands selected for him, so that the state might receive the benefit of the full value of the lands so sold. No price has been fixed by the board, for the lands in question, but the appellant insists that he is entitled to have the same contracted to him at a price fixed in some other case. This claim is clearly untenable.

It is provided in Sec. 16 that "The remainder of the purchase price (after the first payment) shall be paid in not to exceed ten equal yearly payments." Under this provision the time in which the deferred payments shall be made is discretionary with the board.

The petition does not allege that any time for the payment of the remainder of the purchase price was ever fixed, yet the appellant demanded of the board a contract by which the balance of the alleged purchase price should be paid in ten equal yearly payments.

The minds of the parties have never met, either on the question of price, or the time of the deferred payments. Under the statute after an application for lands is made, until the selection is made and the price to be paid, and the time in which the deferred payments shall be made

are fixed by the board, and assented to by the applicant, and a contract of sale containing the stipulation agreed upon is executed, the applicant has no vested rights whatever.

The petition fails to state a cause of action.

The court has no jurisdiction to direct, by mandamus, how the discretionary power, in the premises, vested in the board by the statute, shall be exercised.

It is ordered that the judgment of the court below be affirmed, and that the appellant pay the costs.

BARTCH, C. J., and MINER, J., concur.