## HITCHCOCK, Plaintiff, v. STATE, Defendant.

### (147 N. W. 284.)

**State—Officers—Compensation—Regents of Education—Meeting on State Fair Day.**

Under Laws 1913, Ch. 358, prohibiting state auditor from issuing a warrant for .expenses incurred by any state officer in attending any political meeting, state fair, etc., **held,** that a member of board of regents of education who attended a special meeting of the board held at the same time and place as the state fair, and who also attended the fair a portion of each of the days of said meeting, is not entitled to his expenses for attending the meeting of the board, even though the complaint alleges that said expense was not incurred in attending the fair; the purpose of the Legislature in enacting the statute being to correct a common abuse of calling special meetings of various boards at such times and places that members thereof could secure pay from the state for expenses in attending the fairs or other meetings, when in fact such "special" meetings were called rather for. the purpose of attending such fair, etc.

Whiting and Polley, JJ., dissenting.

(Opinion filed May 18, 1914.)

Original action in the Supreme Court by A. E. Hitchcock against the State of South Dakota, to recover for alleged expenses of attending a meeting of the State Board of Regents of Education. Upon demurrer to the Complaint. Demurrer sustained.

*A. E. Hitchcock,* Plaintiff pro se.

The complaint shows that plaintiff traveled to Huron on the evening of September 9th, and that he remained in the City of Huron for two days, from the evening of September 9th to the evening of September 11th. The sessions of the Board began on the morning of September 10th, at 9 o'clock; that the Board was in session on the day of September 10th, from 9 o'clock A. M. to 12 o'clock M. and from one o'clock P. M. to 3 o'clock P. M., and from 7 o'clock to 11 o'clock P. M.

The minutes of the Board show the work that was performed during the second days' session, and that it would have been impossible, with any reasonable continuous labor on the part of the Board, to have finished this amount of work on the day of the 10th, and the plaintiff would have been compelled to remain over night at Huron to take up the work of the next day. Hotel rooms are charged for the night and not for day service.

The Board itself may fix the time and place of these meetings, and such act is not open to question, unless it can be shown that the discretion of the Board was abused. There is no evidence in the complaint to show that the Board could have transacted its business at Madison the month before, or that there was any injury to the business of the State by meeting at the City of Huron. The minutes disclose that business was transacted by this board relating to all institutions of the state, except perhaps, the Normal School at Spearfish. The complaint recites that in performing the duties of their office the Board convened one or more times in each calendar month of the year, and that in selecting the place of meeting it is practicable to choose some locality convenient to all members of the Board.

"That the various educational institutions of the state were about to begin sessions of school, for the fall term or semester during the month of September, and there was much important routine business to transact by the Regents of Education, as a Board, preparatory to the administration of such institutions, and it was expedient and necessary for the interests of the state that a meeting of the Regents of Education be held on or about the 10th day of September, 1913."

Chapter 358, Laws of 1913, in no wise changes the rule by which the state auditor was authorized to audit the expense account of officers and Boards of the State prior to its enactment. Section 223, Political Code, as amended by Chapter 197, Laws 1903. All presumptions of every nature are in favor of the good faith of the officer, The divers duties falling upon the Regents of Education by virtue of Secs. 205, 207, 208, 209, 211, 213, 214, 215, 595, Pol. Code, and Chaps. 22, 26, 151 and 127, Laws 1911, and Chaps. 84, 88 and 92; Sec. 28 of Chap 23; and Chap 327, Laws 1913, have given rise to a multitude of details, which make it necessary to communicate with and interview people from all parts of the state at divers times and places.

The State Fair, by the Laws of 1907, Chapter 76, is organized by the State Board of Agriculture for the promotion of Agriculture, Horticulture, Mining and Domestic Arts. It is impossible for the Regents of Education to administer these varied activities relating to agriculture in the state without having frequent

conferences with the men who are supporting and directing the agricultural affairs of the state.

*Royal C. Johnson,* Attorney General, for Defendant.

While the act in question may not be as specific as it might, yet it is sufficient to prohibit the expense mentioned in the complaint. Chapter 358, Laws of 1913.

The complaint shows that plaintiff did attend the state fair on state expense which he now seeks to recover from the state; that two recesses were taken during this meeting, one on the afternoon of the 10th and the other on the afternoon of the 11th, and the plaintiff attended the fair during these recesses.

The minutes of that meeting show that an evening session was held on the 11th, clearly establishing that two recesses were taken, apparently for the purpose of attending the state fair on state expense. If they had continued their session uninterrupted until such business as they had was entirely finished, then there would have been practically one day's expense eliminated from the claim of the plaintiff, which proves that the plaintiff attended the state fair on expense which he now seeks to recover from the state.

There is nothing of record showing why this meeting of the regents might not have been avoided by transacting all or most of the alleged business at the Madison meeting, which was adjourned less than thirty days prior to the state fair. Their authority to hold meetings is provided by Section 200, Political Code, except so far as it is modified by the law in question. The complaint in this case clearly shows that the alleged meeting there held was not held by reason of a "weighty emergency."

If two constructions may be given to a statute, that one must be applied which will best protect the public against fraud and imposition, even though in individual instances such construction may work slight hardship. Stern v. City, 82 N. D. 289; 122 N. W. 403; 26 L. R. A. (N. S.) 665.

The spirit and the intention of this statute cannot be questioned. Cherry Fish Co. v. Nelson, 25 Wash. 558, 66 Pac. 55, 57.

The expense in this case is prohibited by the law in question, since it is within the spirit of the statute, and therefore within the letter thereof. Broom's Legal Maxims, 611; 36 Cyc. 1174; Shohoney v. Ry. Co., 22 Am. Cas. 11, 213 Mo. 131, 132 S. W. 1059.

McCOY, J.　This is an original action brought under section 25 Code Civ. Pr.　The plaintiff is president of the state board of Regents of Education.　A special meeting of said board was called and held at the city of Huron on the 10th and 11th days of September, 1913, at which special meeting was transacted business pertaining to the duties of said board.　On the same days the State Fair was in session at the city of Huron, and plaintiff, in addition to performing duties as a member of said board, visited the fair grounds a portion of each of said days.　Thereafter plaintiff as such member of such board presented to the state auditor for allowance his bill of expense for railroad fare, board and lodging, occasioned in attending said special meeting to the amount of $10.73.　The state auditor refused to allow such bill of expense on the ground that the same was in violation of Chapter 358, Laws of 1913.　The foregoing facts, among others, and also the allegation that said expense was not incurred in attending the State Fair, appears from plaintiff's complaint.　The defendant, State, has appeared and demurred to such complaint upon the ground that it does not state facts sufficient to constitute a cause of action..

The only question involved is whether or not the bill thus incurred and presented is in violation of chapter 358, Laws of 1913.　It is a matter of common knowledge in this state that for some years past many state officers and state boards were in the habit of ostensibly having "Special" state business at the particular times and places where political meetings, fairs and other public gatherings were to be held, and of attending such meetings, and transacting some ostensible state business, and also attending the public gathering, and then charging the expense of the trip-mileage and hotel-bills to the state; when as a matter of fact such "special" meeting was called with the view of attending such political meeting, fair or other gathering, rather than for the transaction of business for the state.　With this knowledge in mind, and, for the purpose of correcting the abuse, the legislature of 1913, enacted chapter 358, which provides as follows:

"The state auditor is hereby prohibited from issuing any warrant for the expense incurred by any state officer, employee, or member of any state board, in attending any political meeting,

state fair, corn palace, inaugural or other public meeting of like character."

It appears from the complaint that plaintiff did attend the State Fair a portion of each of the days during which said special meeting of the board was being held. If this statute law means anything at all, it means that the state officers mentioned therein are prohibited from securing warrants for expenses covered by time during which they attended such political meetings, fairs, and other public gatherings, although they might at such time also have transacted some business for the state. Any other construction will render such law a nullity and permit of the same abuses sought to be remedied or corrected thereby. This law in effect says that the state officials and boards therein mentioned cannot charge to the state expenses incurred for meetings of such officers and boards at the time and places when and where any of the meetings therein referred to are being held. This provision of the law could have no application to a state official or board who had some legal duty to perform in connection with the state fair, which required the presence at the fair of such official or board. The Board of Regents has no legal duties to perform in connection with state fairs, or that would require their presence thereat.

The demurrer may be sustained.

WHITING, J. Under the majority holding herein, if one of the state boards believes it to be to the best interests of the state—yes, even that it be absolutely essential to the welfare of the department or institution under its charge—that a meeting of such board be held at the same time and in the same city as the state fair is to be held, and the members of such board are willing to forego the pleasure of attending such fair either before, during or after the period needed for the transaction of the business of their board, and therefore, acting in perfect good faith toward the people of this state, such board holds a meeting at the prescribed time and place but every member refrains from attending the fair, yet they must suffer the loss of their legitimate expenses incident to attending such meeting. Conceding there was an evil custom of such common knowledge that we will presume it to have been known to the members of the legislature, and conceding that the legislature desired to put an end to such custom and

that the act before us was designed for such purpose, yet it is only from the plain and fair import of the words used, when such words are construed in accordance with some accepted rule of construction, that we are permitted to determine the remedy provided. I believe we should refuse to place any such construction upon a law as will result in penalizing the honest official when there is nothing in the words used that indicates such an intent.

It might be pertinent to inquire what would be the effect of this statute, under the majority view, if the board had met the day before the fair opened and, after closing its business on that day, some one of the board had remained the rest of the week in attendance upon the fair. Certainly those who did not remain would be entitled to recover the expenses of the meeting; could the other one collect the same expenses?

The statute as it reads on its face is but a declaration of what was the law without any statute. While it is a fundamental rule in construing statutes, that one must strive to ascertain and give effect to the intention of the legislature, yet it is just as fundamental that the intention must be the intention *as expressed in the statute,* and where the meaning of the language used is plain, it must be given effect by the court. 36 Cyc. 1106. Or as this court said in Ex parte Brown, 21 S. D. 515, 114 N. W. 303:

"While it is the duty of the court to seek for and give effect to the meaning of the lawmakers, its research must not extend beyond legislative language when couched in words that are free from any ambiguity."

As is said in Rossmiller v. State, 114 Wis. 169, 89 N. W. 839, 58 L. R. A. 93; 91 Am. St. Rep. 910:

"It is not allowable to interpret what has no need of interpretation. When the meaning of a law is evident, to go elsewhere in search of conjecture in order to restrict or extend the act would be an attempt to elude it—a method which, if once admitted, would be exceedingly dangerous, for there would be no law, however definite and precise in its language, which might not by interpretation be rendered useless. * * *

"Where the meaning is evident, and leads to no absurd con-

clusion, there can be no reason for refusing to admit the meaning which the words naturally represent."

It may be said that it is *absurd* to suppose the legislature only intended a statutory declaration of what was already the law. This is not the absurdity contemplated by that rule of construction which allows one to look beyond the clear meaning of the words used when, as Cyc. says: "An adherence to the strict letter would lead to * * * absurdity." What is meant is that when the law itself, construed according to the strict letter, would be absurd, then one can look beyond the strict letter, no matter how plain its meaning, for the intent of the lawmakers, and if possible, carry out such intent. The law as it reads in plain English is a declaration of what all must concede is a just and reasonable rule—it is far from absurd though one might deem it to have been needless, and therefore absurd, for the legislature to enact same. It must be conceded that it would have been very easy for the legislature, in plain every day English, to have enacted a law forbidding meetings of public officers to be held at certain times or places, or providing that, if held at such times, no officer attending could collect expenses for attending if he also attended the festival or public meeting held at such time and place, or, if the legislature saw fit, it could very readily in common every day English make it plain that such officer attending an official meeting at such time and place could not collect expenses therefor even though he did not attend the public gathering. We are not here to carry out the intent of the legislature, when to do so would do violence to the English language: As was well said in Woodbury & Co. v. Berry, 18 Ohio St. 456:

"We are satisfied, by considerations outside of the language, that the legislature intended to enact something very different from what it did enact. But it did not carry out its intention; and we cannot take the will for the deed. It is our legitimate function to interpret legislation, but not to supply its omissions.
* * *

'Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction.' "

And as said in Miles v. Wells, 22 Utah 55, 61 Pac. 534:

"But, where there is no ambiguity, the language must be taken as the expression of the legislature's intention, unless other provisions of the statute clearly show that the language was used in a sense different from its natural and ordinary meaning."

The demurrer should be overruled.

Polley, J.   I concur in the views expressed by Whiting, J.