# McCall's Adm'r. v. Hampton.

### APPEAL FROM BOYD CIRCUIT COURT.

ASSIGNMENT OF EXPECTANCY AS HEIR.—A naked possibility or contingency not founded upon a right or coupled with an interest can not be assigned or sold. Therefore the expectancy of a son to inherit his father's estate is not the subject of assignment or sale, and a contract therefor is not enforceable either at law or in equity upon the father's death.

THOMAS R. BROWN FOR APPELLANT.

1. The sale of mere expectancies has been universally condemned at common law. The thing sold must have an actual or potential existence. In every case where the assignment of the expectancy has been sustained, it has been invariably coupled with a right or interest, which is not true of a mere hope of inheritance. (Lee's Ex'or v. Lee, 2 Duv., 134; Grayson v. Tyler's Adm'r, 80 Ky., 358.)

2. There being no right in existence, actually or potentially, in Wade Hampton, his attempted sale did not prejudice the levy of the attachment by the creditor, McCall. (Alves & Co. v. Schlesinger, 81 Ky., 292.)

JNO. F. HAGER FOR APPELLEE.

1. As the petition taken as the answer of appellee contained a denial that McCall owned or was entitled to recover upon the note of Wade Hampton, right to which by purchase he had alleged, the action of the court overruling the demurrer was right.

2. The plaintiff can occupy no better position with respect to the interest of Wade Hampton in his father's estate than Wade Hampton himself. The plaintiff below sued in equity as the assignee of a chose in action, and this case presents all the phases of a contest between equities. Therefore, the equity of the vendee of Wade Hampton being prior in time must be adjudged prior in right.

3. A mere expectancy is assignable in equity for valuable consideration, and where the expectancy has fallen into possession the assignment will be enforced. (Hare & Wallace's notes to Ryall v. Rowles, 2 Leading Equity Cases, p. 547; Story's Eq. Jur. (12th ed.),

*See note to this case as re-published in 33 L. R. A., 266.

McCall's Adm'r. v. Hampton.

sec. 1040, b, and cases cited notes 4 and b; Pomeroy's Eq. Jur., sec. 1285; *Idem.*, sec. 1287, note 1; East Lewisburg, &c., v. Marsh, 91 Pa. St., 96.)

4. The conveyance was by deed of general warranty, which is sufficient to pass the interest by estoppel. (Hannon v. Christopher, 34 N. J. Eq., 459; Mitchell v. Winslow, 2 Story, 630; Woodworth v. Sherman, 3 Story, 175; Gen. Stats., chap. 63, sec. 17; McWilliams v. Wisby, 2 S. & R., 507; Hobson v. Trevor, 2 P. Wms., 191; Whitfield v. Fauset, 1 Ves., 387.)

Cases distinguished: Wheeler's Ex'ors v. Wheeler, 2 Met., 477; Lee's Ex'ors v. Lee, 2 Dug., 134; McBee v. Myers, 4 Bush, 357; Alves v. Schlesinger, 81 Ky., 290.)

Additional citations in petition for rehearing in support of point 4: Logan v. Steele's Heirs, 4 Mon., 430; Logan v. Moore, 7 Dana, 76; Dickinson's Heirs, v. Talbot's Exor's, &c., 14 B. Mon., 65; Wheeler v. Wheeler, 2 Met., 474; Bigelow on Estoppel, pp. 322, 325; Ellis v. Welch, 6 Mass., 246; Gibbs v. Thayer, 6 Cush., 30; Jackson v. Bradford, 4 Wend., 619; Perkins, &c., v. Coleman, &c., 90 Ky., 612; Bohon v. Bohon, 78 Ky., 408.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The appellant, holding by assignment a certain note against Wade Hampton, instituted this action, in which an attachment was obtained and levied on what was claimed to be his interest as an heir at law in certain lands in Boyd county which belonged to his father, William Hampton, who died intestate on the 26th of August, 1889.

Charles H. Hampton, a brother of Wade Hampton, died on the 7th of February, 1889. His personal representative presented his petition in the action and was made a defendant therein. The allegations which it contains are substantially as follows, to-wit: That Wade Hampton was suffering from a cancer and was without means to procure medical treatment for his malady; that his father had expressed a desire to sell part of his land to aid him; that the father was then too infirm to make such disposition of his property; that in order that he might procure medical treatment, in

consideration of $800, Wade Hampton sold and by deed con-
veyed to Charles H. Hampton, all right, title and interest he
then had, or might thereafter become entitled to, from the
estate of his father, William Hampton, of whatsoever char-
acter; that by the deed he attempted to convey to him his
whole interest as fully as if he were then seized and pos-
sessed of the same, and that the deed contained a covenant
of general warranty.

This deed was executed on the 27th of January, 1886, more
than three years before the death of the father.   To this
pleading a demurrer was filed and overruled, and appellant
failing to plead further the petition was dismissed and the
attachment discharged.

The question raised by the demurrer, and which is to be
determined, is, did Charles H. Hampton acquire the interest
of Wade Hampton in his father's estate by virtue of the con-
veyance which he received for it?

That a contingent interest is the subject of transfer and
sale there can be no doubt.   A contingent estate, which is to
vest upon some future event, such as the owner becoming
of age, may become the subject of assignment or contract of
sale.   (Grayson v. Tyler's adm'x, 80 Ky., 363.)

The question in this case is whether a naked possibility or
contingency, not founded upon a right or coupled with an in-
terest, can be assigned or sold.   Under the common law this
could not be done.   There is no statute in this State chang-
ing the common law on this subject.   When the contract
was made and the conveyance made to Charles H. Hampton,
Wade Hampton did not have any interest in his father's es-
tate.   The subject-matter of the contract was not *in esse* at
the time of the contract.   A contract of bargain and sale is
invalid unless there is a thing or subject-matter to be con-

tracted for.    This is absolutely essential to the validity of
the contract.

It has been said that "if a son and heir bargains and sells
the inheritance of his father this is void because he hath no
right in himself."    (Coke upon Littleton, 2 Bacon's Abridg-
ment, title Bargain and Sale, 4.)

This question was fully considered in the case of Wheel-
er's ex'ors v. Wheeler, 2 Met., 474.    The court held that the
son, who had executed a deed purporting to convey his inter-
est in his father's estate (the father then being alive) to his
brother, was, notwithstanding that fact, entitled to recover
the interest in the estate which his deed purported to con-
vey.

It is conceded by counsel for appellee that it is essential
to the legal validity of a contract that the thing sold must
have an actual or potential existence, and that a mere possi-
bility or contingency, not founded on a right or coupled
with an interest, can not be the subject of sale or assign-
ment.    Notwithstanding this is the common-law rule, it is
insisted that the naked possibility or expectancy of an heir
to his ancestor's estate may be the subject of a contract of
sale for a valuable consideration, and enforced in equity af-
ter the death of the ancestor.

There was no claim in Wheeler v. Wheeler that the sale
was not in good faith nor for a valuable consideration, still
the court held he was entitled to recover.

In the case of Alves v. Schlesinger, 81 Ky., 290., the facts
were substantially as they are in the case at bar.    The con-
veyance was for a valuable consideration.    After the death
of the ancestor a creditor of the heir, who undertook to sell
his interest in his ancestor's estate during the ancestor's life-
time, sought to subject such interest to the payment of his

debt. The party to whom the contract of sale had been given claimed the interest under the contract, and denied the creditor's right to subject it to the payment of the debt. The court sustained the claim of the creditor.

To recognize the contention of counsel as being correct requires us to overrule Wheeler v. Wheeler and Alves v. Schlesinger. Let us consider if this should be done.

Every text-writer and every court in this country, so far as we are aware, recognize the rule of the common law to be as we have stated it. Some text-writers say, and some courts have held, that a *mere* possibility or expectancy is assignable in equity for a valuable consideration, and equity will enforce the contract when the possibility or expectancy has changed into a vested interest or possession.

The explanation is sometimes that the assignment operates as a contract by the assignor to convey the legal estate or interest when it vests in him, and that equity will specifically enforce such contract by decreeing a conveyance.

East Lewisburg, &c., Co. v. Marsh, 91 Pa. St., 96, is cited by counsel for appellee and the court assigned this as the reason for its decision, viz: "Equity will support assignments of contingent interests and expectancies, things which have no present actual existence, but rest in mere possibility, not indeed as a present positive transfer operating *in praesenti*, for that can only be a thing *in esse*, but as a present contract to take effect and attach as soon as the thing comes *in esse*."

This case is cited to sustain the text (Pomeroy's Equity Jurisprudence), wheren it is stated that equity will enforce contracts of sale of *bare* possibilities and expectancies. In the note to the text it is said: "In my opinion this theory of agreement is hardly adequate to explain the full doctrine."

The learned author (close of note 1, section 1287, Pomeroy's Equity Jurisprudence) feeling that the courts which held that such contracts could be enforced in equity after the death of the ancestor were failing to give an adequate reason for these decisions on the "theory of agreement," and that it would not do to admit that the right to the expectancy did not attach until the death of the ancestor, presented as the *rationale* of the equitable doctrine (section 1271) that the assignee of the expectancy acquired at once a *present* equitable right over the future proceeds of the expectancy, which was of such certain and fixed nature that it was sure to ripen into an ordinary equitable *property right* over those proceeds as soon as they came into existence by a transformation of the expectancy into an interest in possession; that there was an equitable ownership or property in abeyance to be changed to an absolute property upon the happening of the future event.

The learned author was conscious of the fact that when a court said that the assignee or vendee did not take a present interest in the thing contracted for it was illogical that such interest would attach as soon as the thing came *in esse*. His conclusions were correct. But when he endeavors to give the correct theory upon which courts of equity proceeded he gives one more indefensible than the one which he criticises. He states a matter which does not exist in fact or law; that a *bare* possibility or *expectancy* is "*sure* to ripen into an ordinary equitable *property* right." On the contrary it is absolutely uncertain that it will ripen into a property right at all. Notwithstanding the thing is not *in esse* the learned author says that there is acquired *at once a present equitable right* over the future *proceeds* of the expectancy.

McCall's Adm'r. v. Hampton.

Here we have the assignee or vendee taking a presnt right in a thing not in existence and in the *proceeds* of an expectancy which may never materialize. To reach his conclusion he utterly disregards the legal significance of the words "*naked* possibility or expectancy." They import a *hope* of succession but not a *certainty*, as implied by the statement that they were *sure* to ripen into a property right. His premises are false and conclusions erroneous.

It is axiomatic that in every valid grant there must be a grantor, grantee and a thing to be granted. When there is no subject matter—nothing *in esse* about which a contract can be made—the essential thing to the validity of a contract is absent, hence such contract is declared by the law to be void. If it be void then no party to it can maintain an action upon it. A wise public policy produced the law which fixed the status of parties to such a contract. If it is wholesome to declare such contract invalid, why should courts of equity enforce such contract in defiance of the law and a wise public policy? If this is to be the practice of courts of equity, then the common law on this subject is a dead letter and inoperative. Why should the common law declare such contracts invalid and void if courts of equity have the power to vivify and enforce them? If this is to be the rule, why not declare the common law not in force on this subject? It seems to us to be a travesty upon common sense for the law to declare a contract void and yet say that it is enforceable in a court of equity. Some courts hold that the expectancy of an heir to inherit his father's estate is not an interest capable of assignment in equity any more than at law, and we agree with such courts upon the question.

It seems at this late day it is needless to discuss the wis-

dom and policy of a law which has been sanctioned for so many generations, and we do not feel that we are called upon to defend it. A strict adherence to it will save multiplying contentions, protect the improvident children and heirs at law from fraud and deceit, save free and untrammelled the actions of the possessors of estates in their distribution. If there were no other reasons for adhering to the rule, those just suggested would be all sufficient, in our opinion, for doing so.

Judgment reversed with directions to set aside the order overruling the demurrer and for further proceedings consistent with this opinion.