## EFFECT OF VOLUNTARY APPEARANCE OF HEIRS IN A PARTITION SUIT TO WHICH THEY HAD NOT BEEN MADE PARTIES.

Common Pleas Court of Morgan County.

ALBERT C. NEWTON v. MARGARET HARRIS ET AL.

Decided, December 23, 1918.

*Partition—Summons Not Necessary—In the Case of Heirs Not Made Parties Who Voluntarily Appear—Heirs of the Blood Not Estopped by Quit-Claim Deeds from Claiming by Descent.*

1. In an action in partition where the plaintiff fails to make all the heirs parties but correctly describes all the lands sought to be partitioned, and the remaining heirs voluntarily appear and file answer correctly setting out the interests of each and all the heirs but making no cross demands, no further service of summons. is necessary.

2. H, the wife of C, inherited from her father the undivided one-fifth of his real estate. C and H afterwards purchased the remaining four-fifths from the other heirs of her father, deeds having been made jointly to C and H. H dies intestate, without issue, C thereby inherits from H a life estate in the one-fifth which came to her by descent, and an estate in fee in her undivided two-fifths which came to her by purchase, under Sections 8573 and 8574, General Code. After H's death C procured quit-claim deeds from the heirs of H for their respective interests in the undivided one-fifth which she had inherited, the deeds being in ordinary form, describing the whole of the property without designating the respective portions of the grantors and with no recitals or covenants. All the heirs of H stand in equal degree in con-sanguinity, to-wit, nephews and nieces. C afterwards dies intestate and without issue, never having remarried, leaving two living, and four dead sisters, the latter having issue. *Held:* That the heirs of the blood of H are not estopped by their said deeds from claiming by descent from C; and under Section 8577, General Code, the heirs of the blood of H take one-half and the heirs of the blood of C take the other half of the two-fifths which descended to C from H under Section 8574, General Code.

3. In such case C is the common ancestor, and the descendants not being in a direct line of descent, and not being of an equal degree

in consanguinity, take *per stirpes,* under Sections 8582 and 8583, and not *per capita,* under Section 8581, General Code.

*M. E. Danford,* for plaintiff.
*McDonald & Slabaugh,* contra.

WEBER, J.

This is an action brought by Albert. C. Newton for the partition of lands owned by the late Thomas D. Clancy, deceased, lying in Windsor and Meigsville townships. The petition is in the ordinary form. The heirs of the blood of the decedent only are made parties by the plaintiff. The petition was filed May 17, 1918. There were some unknown heirs who were later ascertained by plaintiff and they were individually made parties by amendment to the petition filed May 27, 1918. Waivers of summons were filed by some of these defendents and service was made on each of the other defendants named in said pleadings under praecipe filed by plaintiff.

On July 27, 1918, leave was obtained for some nineteen more persons, "heirs of Ann Henry Clancy" to be made defendants, some of whom on the same date voluntarily appeared and filed an answer and cross-petition, so called, through their counsel, McDonald & Slabaugh, and service was made upon the others as well as each and all the original parties to the action, including the plaintiff.

The cross-petition sets out two alleged causes of action, the first embodying the fee to 116.50 acres and also the coal underlying 80 acres described as "4th tract," and the second cause, a separate tract of 8.50 acres.

An issue is raised by these parties who claim an interest in the lands described in the pleadings, as nephews and nieces of "Ann Henry Clancy," who was the wife of Thomas D. Clancy. A brief history of so much of the title to these lands as is necessary for the determination of the questions involved appears in one of the briefs filed herein, from which I largely quote.

Some time prior to March 21, 1889, the date of a deed from Julia Clark to T. D. and A. H. Clancy, Robert Henry died intestate, leaving the following children as his heirs at law en-

titled to inherit his estate, viz.; Julia Clark, Temperance Mellor, Robert S. Henry, Lillis Corry and Ann Henry Clancy. Ann Henry Clancy and Thomas D. Clancy purchased the undivided one-fifth interest of each of the other four sisters and brother and took title in the names of Thomas D. Clancy and Ann Henry Clancy. Then this real estate was owned as follows:

One-fifth was owned by Ann Henry Clancy by inheritance from her father, and two-fifths was owned by her by purchase, she owning three-fifths in all, and the other two-fifths by Thomas D. Clancy, by purchase. T. D. Clancy and Thomas D. Clancy are the same individual. About the year 1909 Ann Henry Clancy died intestate, leaving no heirs of her body and leaving as her heirs at law her husband, Thomas D. Clancy, and her brother and sisters, or their children. Thomas D. Clancy inherited from his deceased wife two-fifths of the real estate described in the first cause of action, except the fourth parcel thereof, in fee simple, which was an estate by purchase, and a life estate in the one-fifth which the said Ann Henry Clancy inherited from her father, Robert Henry, with the remainder to her brother and sisters, or their children.

On or about August, 1909, Thomas D. Clancy secured a quit-claim deed from one sister of his deceased wife, viz., Temperance Mellor, and soon thereafter he secured quit-claim deeds from the children of the deceased brother and sisters, which quit-claim deeds are in the usual form. These deeds recite a consideration of $200 for Temperance Mellor, $200 for the heirs of Julia Clark, (Jeanette Russell and H. L. Russell, her husband; Tacy A. Folk and Addison Folk, her husband; Rose V. James and L. O. James, her husband; and Julia A. Clark, unmarried), $200 for the heirs of Robert S. Henry, a brother (James E. Henry and Eva Henry, his wife; and Anna B. Henry, unmarried), and $200 for the heirs of Lillis Corry (R. W. Corry and Lucy Corry, his wife, and Ruth Corry, unmarried). These deeds are recorded in Morgan county deed record, Vol. 57, at page 446 and succeeding pages.

Shortly thereafter, in September, 1909, Thomas D. Clancy as guardian of the within named defendant, Patrick Henry, filed

his petition as such guardian in the probate court of this county and on October 5, 1909, procured an order from the court to sell his said ward's interest in said lands as an heir of Robert Henry, deceased, who was a brother of said Ann Henry Clancy. This undivided interest of Patrick Henry was purchased from the guardian by Charles H. Fouts and later was acquired by the said Thomas D. Clancy by deed from said Charles H. Fouts. By acquiring all these deeds the said Thomas D. Clancy became the absolute owner of the whole of the premises described in the petition. These deeds are alike in form except the guardian's deed to Fouts, and they contain no covenants or recitals. The granting clause, so called, in each is as follows: ''Do hereby remise, release and forever quit-claim to the said T. D. Clancy, his heirs and assigns forever, the following real estate,'' etc.

Then follows a description, not of the undivided interests of the several grantors, but of the whole of the first three tracts set out and described in the alleged cross-petition of the defendants. (The third tract formerly contained 15 acres, 4½ acres of which was sold by Clancy and wife.) This is immediately followed by the customary habendum: ''To have and to hold said premises with all the privileges and appurtenances thereunto belonging to the said T. D. Clancy, his heirs and assigns forever. In witness whereof,'' etc.

Upon this statement of facts three questions are raised:

First, was it necessary for service to be issued on the alleged cross-petition?

Second, did the quit-claim deeds made by the said Ann Henry Clancy heirs to T. D. Clancy (and guardian's deed to Fouts) bar or estop them from holding the after acquired interests, which they now claim in the undivided one-fifth part of the first three tracts described in the cross-petition, containing 116.50 acres?

Third, if entitled to share in this estate, do the claimants (nephews and nieces of Ann Henry Clancy) take *per capita* or *per stirpes?*

As to the first proposition, I think but little need be said. As stated in the outset, this is an action in partition. Not a single

question is raised under the pleadings except this: Who are entitled to participate in the partition' of these lands, and what share does each take?

The petition and amendment thereto set out the respective shares, as plaintiff, no doubt, then understood them. The cross-petition brings nothing else. True, the cross-petitioners bring in new parties, and those who have not voluntarily come into court have been properly brought in and new or different interests have been set up thereby and in part admitted by plaintiff; but has any new question arisen and been brought in by the cross-petition of which the parties already in court would not be bound to take notice?

In the familiar case of *Brown* v. *Kuhn*, 40 Ohio St., 468, Judge Granger, in announcing the opinion of the court at page 485, says:

"To summon those already in court would add materially to the cost of litigation without reason. The cross-petition can ask relief only 'touching the matters in question in the petition.' The same section that states what a defendant may set forth in his answer includes the matter of a cross-petition. Every other defendant is warned to examine the court files after the rule day for answer, for cross-petitions against himself as fully as is the plaintiff in the action."

And again:

"So long as a cross-petition in an. action is directly confined to 'matters in question in the petition,' the summons issued on the petition would be sufficient notice to sustain a judgment rendered on a cross-petition." *Southward* v. *Jamison*, 66 Ohio St., 290.

It is therefore apparent that the issuing of summons on the cross-petition of parties already in court was unnecessary, and this notwithstanding the fact that their interests might be materially affected through the filing of the cross-petition.

Something might be said as to whether the pleading styled "cross-petition" is properly named, but it is of no consequence.

Passing to the second proposition—

Are the heirs of the blood of Ann Henry Clancy by their deeds to Thomas D. Clancy, in 1909, estopped from asserting their ownership in an undivided one-fifth of the 116.50 acres which otherwise would have descended to them as such heirs under Section 8577, General Code?

A leading Ohio case on the subject of estoppel by deed, cited by most text-writers and later authorities which I have had occasion to examine, is that of *Hart* v. *Gregg*, 32 Ohio St., 502. In this case Archibald Gordon, Jr., son of Archibald Gordon, Sr., who had entered the land in question, made a conveyance of the land to Hart while the father was yet alive. The son afterwards acquired the land by descent from his father and it was claimed that the deed estopped him from asserting his title.

Johnson, Chief Judge, in delivering the opinion said that that depended upon the terms of the deed. A copy of the deed is set out in the opinion. The granting clause contains the words: "Doth grant, bargain and sell unto Stephen F. Hart, his heirs and assigns forever, all his lands in Ohio," etc. This is followed by a description of the lands, and then the habendum: "To have and to hold the same forever."

The court then proceeds (p. 513) :·

"The question then is, would Archibald Gordon, the son, or his heirs or assigns, if defending in this action, be estopped by reason of any recitals in this deed of June 27, 1827? We think not, for it is well settled that where no estoppels arise from warranty, recital, or otherwise, a release or conveyance operates only on existing rights." (Citing *Kinsman* v. *Loomis,* 11 Ohio, 478.)

In this case the above rule is recognized, although the court held that the recital of facts in the deed estopped the grantors from reasserting title.

In the case at bar, there are no recitals of facts in the deeds that would make a subsequent assertion of title inconsistent therewith, as in *Garlick* v. *Pittsbugh & W. Ry.,* 67 Ohio St., 223.

Where the rights of third parties, innocent purchasers for value have not intervened, the intentions of the parties at the time of the conveyance ought to control, unless the language

and expressions in the deeds are so clear and plain that they admit of but one interpretation. Could Thos. D. Clancy, or these heirs of Ann Henry Clancy have then anticipated that they might at some future time possibly inherit again through her and by these deeds intend to cut off such contingency? They must have known that the object of Thomas D. Clancy in procuring this conveyance was simply to complete and perfect his title to the whole of these lands; and he did thus have vested in himself a perfect and absolute title in fee simple with full power of *jus disponendi*. *Digby* v. *Digby*, 5 C.C.(N.S.), 130.

With this right and power complete in Thomas D. Clancy and the mere exercising of it sufficient to cut off all possible chance of heirship under him, the possibility would indeed be remote that any of them ever conceived such thing; and, further, it could not be true as to the defendant, Patrick Henry, who was at the time of his conveyance under guardianship with deed for his interest made under order of court.

Nor do I think the fact that each of these deeds covers the *whole* of the premises rather than the *undivided interests* actually owned by each grantor, adds much, if any strength to the claim that they must have intended these conveyances to cover any after-acquired interests. All lawyers know that it is not unusual where a conveyance by quit-claim is desired, to make the description broad enough to fully cover the claim or interest of the grantor, because it is usually treated and considered as a release only of whatever interest the grantor may have in the premises.

I have made considerable research of the authorities and have found the rule almost, if not quite universal throughout all the states, that where there are no covenants of warranty, or recital of facts such as would put the grantor claiming subsequent title in an inconsistent position with relation to the recitals, covenants or stipulations in his deed, a conveyance by quit-claim or release will never bar the grantor or those claiming under him from asserting an after-acquired title.

Quite a collection of authorities on the subject may be found in the notes to *McCall* v. *Hampton,* 98 Ky., 166; 8 R. C. L., Sec-

tion 113, p. 1060; 11 Am. & Eng. Encyc. of Law (2d Ed.), pp. 409 and 410.

Attention might be called to the Missouri cases cited in the notes on page 410. It appears that in that state they have a statute in which it is declared that in case a deed of an indefeasible estate in fee simple is made, if the grantor did not have the legal title to the land conveyed, but afterwards acquired it, the legal estate subsequently acquired should pass to the grantee.

It has been held by the Supreme Court of Missouri in construing this legislation, that this statute does not intend that a quit-claim deed, although it uses language to pass the fee and not any smaller estate would, therefore, pass a new title not belonging to the grantor when he makes the deed. (See cases there cited.)

The conclusion reached by the court obviously follows that the heirs of the blood of Ann Henry Clancy take by inheritance under Section 8577, General Code, the undivided one-fifth of the 116.50 acres.

The third and remaining question is, do the heirs of the blood of Ann Henry Clancy, all being of the same degree of consanguinity to-wit, nephews and nieces, take *per capita* under Section 8581, General Code, or *per stirpes* under Section 8582?

It is not necessary to take much time to discuss this question, as all those who are directly represented by counsel (and from the answer they *all* seem to be so represented) are claiming to take *per stirpes*. The plaintiff alone insists that they share equally in the one-fifth, if at all, and in whatever proportion they may be seized can not affect his rights.

Plaintiff claims that they take as the heirs of Ann Henry Clancy. But that can not be, for she has no estate here to be divided. Her estate was inherited by her husband, Thomas D. Clancy, or, putting it in a different form, the statute placed him in the line of descent and cast her estate upon him. If these heirs of her blood would inherit from Ann Henry Clancy, then an administrator of her estate is necessary and he is the only person who could make legal distribution.

Prior to the year 1877, these heirs would not have inherited any of Thomas D. Clancy's estate (74 O. L., 81); it would all have descended to his own blood, even though two-fifths of it came by purchase to Ann Henry Clancy, his wife.  Summers, J., in *Stockton* v. *Frazier,* 81 Ohio St., 227, 233, says:

"The supplementary act of 1877   *   *   *   was enacted to remove the apparent or supposed hardship resulting from the statute as so interpreted."

It was, therefore, by virtue of this statute that the line of descent was changed.  It is sometimes rather difficult to get away from the notion that the line of descent must always be fortified by the blood of the ancestor.

"*Descent* is where the title is vested in a man by the single operation of law."  2 Black. Comm., 201.

"Descent, or hereditary possession, is the title whereby a person on the death of his ancestor acquires his estate by right of representation as his heir."  4 Kent's Comm., 373.

There can be no other title aside from descent except by purchase.  There can be no title by descent except there be an ancestor.  There can be no one to take from an ancestor except he be an heir.  The heir may be in the channel of the blood of his ancestor, as the statute in justice usually directs  it; or he may be a person selected by the law,·as in this case, and may be the receptacle whose blood is entirely foreign to that of the ancestor; but one takes by descent just the same as the other.

There can not in this estate, nor any other, be two ancestors.  The ancestor in this estate must be Thomas D. Clancy.  One set of heirs trace their title under the laws of consanguinity directly to the ancestor.  The other set trace theirs back by the same law to a designated deceased person (wife of Clancy), but would never by reason of the blood be seized of any part of the estate.  So Ann Clancy can not be the ancestor in this estate from whom they may inherit; but the statute bridges over the hiatus in the blood and places them in the line of descent from Thomas D. Clancy.

It is just as important, of course, that the blood be traced back to Ann Henry Clancy by the one set of heirs as it is that the other heirs trace theirs back to Thomas D. Clancy.

Thomas D. Clancy, then, is the common ancestor, and in that relation, must the interests of each and all the heirs be considered in determining their distributive shares.

Section 8581, General Code, is as follows:

"When all the descendants of an intestate, in a direct line of descent, are of an equal degree of consanguinity to the intestate, whether children, grandchildren, or great-grandchildren, or of a more remote degree of consanguinity to such intestate, the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguinity may be." (Section 4165, Revised Statutes.)

Two very important conditions must prevail in order that the heirs may inherit equally under this section.

First, *all*. of the descendants must be in a direct line of descent from the intestate whose estate is being distributed, as from father to son, son to grandson, etc.

Second, all must be of an equal degree of consanguinity to the intestate.

In this case neither of these conditions exists. None of the descendants is in direct line of descent. All are collateral and all are not of an equal degree of consanguinity.

Section 8582, General Code, provides:

"If some of the children of such intestate are living, and others are dead, the estate shall descend to the children who are living, and to the legal representatives of such as are dead, so that each child of the intestate who is living will inherit the share to which he or she would have been entitled if all the children of the intestate were living, and the legal representatives of the deceased child or children of the intestate inherit equal parts of that portion of the estate to which such deceased child or children would be entitled if such deceased child or children were living." (Section 4166, Revised Statutes.)

Section 8583 defines and enlarges the provisions of Section 8582 as follows:

''The provisions of the next preceding section shall apply in all cases in which the descendants of the intestate, entitled to share in the estate, are of unequal degree of consanguinity to the intestate, so that those who are of the nearest degree of consanguinity, will take the share to which he or she would have been entitled, had all the descendants in the same degree of consanguinity with him or her, who died leaving issue, been living.'' (Section 4167, Revised Statutes.)

Clearly, this case must fall under the last two sections above named. The decision of the Supreme Court of *Dutoit* v. *Doyle,* 16 Ohio St., 400, and approved by *Parsons* v. *Parsons,* 52 Ohio St., 470-485, but follows and recognizes the common law rule and the statutory provisions under Sections 8582 and 8583, General Code. The language of these statutes as applicable to this case is plain and unequivocal.

The 116.50 acres of this estate must, therefore, be distributed in accordance with these two last named sections.

I believe the shares are correctly set out in the cross-petition of defendants and no further calculation will be necessary.

As to the coal underlying the 80 acres in Meigsville township, and the 8.50-acre tract in Windsor township, described in the pleadings, I understand there is no dispute.

The blood relatives of Thomas D. Clancy take three-fourths, and those of Ann Henry Clancy take the remaining one-fourth.

An order of partition will be granted plaintiff.