## 12906

WALLACE *ET AL.* v. QUICK *ET AL.*

(153 S. E., 168)

272

*Mr. J. W. LeGrand,* for Norman Quick, appellant,

*Messrs. R. M. Lindsay* and *Tison & Miller,* for Barrentine heirs, respondents,

*Messrs. Rogers & Ellerbe,* for plaintiffs-respondents,

April 24, 1930.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action for the partition of a tract of land containing 135 acres alleged to have belonged to one Evander Wallace, Sr., and inherited by the plaintiffs and all of the defendants except Norman Quick, who claims the entire interest in the land. The case is quite complicated.

It appears essential to an apprehension of the various points that have arisen that a statement of the family relations of the Wallaces be given at the outset:

All of the parties, including the defendant Norman Quick, claim through a common source of title, Evander Wallace, Sr. He died intestate in 1858, seized and possessed of the land, and leaving as his heirs at law, a widow, Mary Ann, two sons, John B. Wallace and Evander Wallace, Jr., a daughter Mary Ann, who married John Barrentine, and a daughter Helena, who died unmarried.

The widow, Mary Ann Wallace, thereby inherited one-third interest in the land, and the four children named, ¼ of 2/3 equal 1/6 each.

About a year after the death of Evander Wallace, Sr., his widow, Mary Ann Wallace, married Eli English, and died in 1916, leaving no children by her English husband. During her lifetime she remained in possession of the premises, with her second husband.

One of the daughters Helena, died unmarried during the lifetime of her mother, and her interest of 1/6 devolved upon her mother, her brothers, John B. and Evander, and her sister, Mary Ann Barrentine, in equal portions. So that thereafter Mary Ann (Wallace) English, became entitled to 1/3 plus ¼ of 1/6 equal 3/8 and each of the others John B., Evander and Mary Ann Barrentine to 1/6 plus ¼ of 1/6 equal 5/24.

(Checking: Mary Ann Wallace (English) 3/8, plus John B. 5/24, plus Evander 5/24, plus Mary Ann Barrentine 5/24 equal 24/24.)

On September 2, 1885, John B. Wallace conveyed to Steven Quick his interest in the land, described as "being the same tract of land heretofore conveyed by Barnabas Wallace to Stephen Wallace and by said Stephen Wallace to Evander Wallace my father, my interest now being the share I am entitled to as an heir at law of my father, the said Evander Wallace deceased, and any other interest I may be entitled to by inheritance or otherwise. This deed to take effect after the death of my mother."

On March 8, 1892, Evander Wallace, Jr., conveyed to Martha Ann Quick, wife of Steven Quick, his interest in the land, described as "being the same tract of land conveyed by Barnabas Wallace to Stephen Wallace and by said Stephen Wallace to Evander Wallace my father, my interest therein being the one-third part thereof upon the expiration of the life estate in my mother Mrs. Eli English."

(It seems clear that both John B. Wallace and Evander Wallace, Jr., intended and doubtless had agreed that their mother should have a life estate in the property.)

The other child Evander Wallace, Sr., and Mary Ann Wallace (English), namely, Mary Ann Wallace (Barrentine), does not appear to have made any disposition of her interest inherited from her father. (She inherited nothing from her mother, by reason of the will of her mother which will be later referred to.)

Mary Ann Wallace (English), died, as stated, in 1916, leaving a will dated May 13, 1910, in which she devised her interest in the land in question to her son John B. Wallace.

Mary Ann Wallace, daughter of Evander Wallace, Sr., and Mary Ann Wallace (English), married John Barrentine, as stated, and died in 1870, leaving as her sole heir at law a daughter, Alma Barrentine. (It is assumed, in the

absence of any showing to the contrary, that she survived her husband.)

Alma Barrentine, daughter of Mary Ann Barrentine, married Martin C. Freeman. She died intestate in 1896, leaving as her heirs at law her husband Martin C. Freeman, and three children, Blanche Freeman, Ida Freeman (later Ida Dumeer, and later Ida Peterson), and George Freeman. ·

Martin C. Freeman afterwards married Emma ——— , and died intestate, leaving as his heirs at law the widow, Emma, the three children named by the first wife, and the eight children named by his last wife, Emma.

Upon the death of Alma Barrentine, first wife of M. C. Freeman, he inherited one-third of her interest (which as has been seen was 5/24), that is 1/3 of 5/24 equal 5/72, and each of the three children of the first marriage inherited 1/3 of 2/3 of 5/24 equal 5/108, in all 15/108.

(Checking: The inherited interest of Alma Freeman was 5/24; of which M. C. Freeman inherited 5/72 and the three children in all 15/108, these added make 5/24.)

Upon the death of M. C. Freeman, his widow, Emma, inherited one-third of his interest, that is 1/3 of 5/72 equal 5/216, and each of the eleven children of both marriages inherited 1/11 of 2/3 of 5/72 equal 5/1188, in all 55/1188.

(Checking the inherited interest of M. C. Freeman was 5/72; of which his widow inherited 5/216 and the eleven children in all 55/1188, which added make 5/72.)

On November 14, 1916, Martha Ann Quick and the other heirs at law of Steven Quick, namely Maggie Quick, J. Thad Quick, and Fred M. Quick, by deed, conveyed to the defendant Norman Quick the tract in question, and described as being the land conveyed by Evander Wallace, Jr., to Martha Ann Quick by deed dated March 8, 1892, and by John B. Wallace to Steven Quick by deed dated September 2, 1885. (Both deeds above referred to.)

The defendant Norman Quick immediately went into possession of the entire tract, and has so continued ever since.

The heirs at law of Evander Wallace, in addition to the prayer for partition, demand an accounting from Norman Quick of the rents and profits of the place beginning with January 1, 1917.

Assuming that the heirs at law are entitled to a partition of the land, an interesting question is presented as to the quantity of the interest of Norman Quick as a tenant in common with the heirs at law.

He claims title through Evander Wallace, Jr., and John B. Wallace by the deed from Evander Wallace, Jr., to Martha Ann Quick, dated March 8, 1892, and by the deed from J. B. Wallace to Steven Quick, dated September 2, 1885.

By the deed from Evander Wallace there was conveyed his interest as an heir at law of his father, Evander Wallace, Sr., which was, as has been seen, 5/24. About this there is no controversy. So we begin with the assurance that Norman Quick was entitled to that interest.

By the deed from J. B. Wallace there was conveyed "my interest now being the share I am entitled to as an heir at law of my father, the said Evander Wallace, deceased, *and any other interest I may be entiled to by inheritance or otherwise.*"

The contention of Norman Quick is that this deed conveyed, not only the interest which J. B. Wallace inherited as an heir at law of his father, Evander Wallace, Sr., which was 1/4 of 2/3 equal 1/6, but also the interest which he inherited as an heir at law of his deceased sister Helena, which was 1/4 of 1/6 equal 1/24, and the interest which he took as devisee under the will of his mother. Mary Ann Wallace (English), which was one-third plus her interest as an heir at law of her deceased daughter Helena, which was as above stated 1/4 of 1/6 equal 1/24; this would give Norman Quick 1/6 plus 1/24 plus 1/3 plus 1/24 equal 5/8, plus interest of Evander Wallace, Jr., which was 1/6 plus 1/4 of 1/6 equal 5/24.

This would give Norman Quick:

1. The interest of J. B. Wallace inherited from his father, one-sixth .................... 16.66%
2. The interest of J. B. Wallace inherited from his deceased sister, Helena, one-twenty-fourth ............................... 4.17%
3. The interest of J. B. Wallace by devise under the will of his mother, as an heir at law of Evander Wallace, Sr., one-third .......... 33.33%
4. The interest of J. B. Wallace by devise under the will of his mother as an heir at law of her deceased daughter Helena, one-twenty-fourth 4.17%
5. The interest of Evander Wallace, Jr., inherited from his father, one-sixth .............. 16.66%
6. The interest of Evander Wallace, Jr., inherited from his deceased sister, Helena, one-twenty-fourth ............................... 4.17%

Total ............................... 79.16%
Leaving undisposed of the inherited interest of Mary Ann Barrentine, five twenty-fourths .. 20.84%

Accounting for the whole ............... 100.00%

The issue vital to the interests of the plaintiffs, Vann T. Wallace and Helen Carver, children of John B. Wallace, who were substituted in his stead as plaintiffs after his death, and seriously affecting the interest of Norman Quick, is whether the deed from John B. Wallace to Steven Quick conveyed not only his interest as heir at law of his father Evander Wallace, Sr., but also his interest as heir at law of his deceased sister Helena, and also his interest as devisee under the will of his mother, Mary Ann (Wallace) English.

The defendant Norman Quick contends that this issue should be decided in his favor upon a proper construction of the deed which conveyed the interest of John B. Wallace inherited from his father and also "any other interest I may

be entitled to by inheritance or otherwise." If this contention should be sustained, the plaintiffs, children of John B. Wallace, take no interest at all in the distribution.

The 5/24 interest, 20.84 per cent. distributable among the Barrentine and Freeman heirs, upon the correctness of the foregoing hypothesis, would be apportioned as follows:

1. Blanche Freeman, inherited from her mother 5/108, and from her father 5/1188 equal to 60/1188. ............................... 5.05%
2. Ida Peterson same ..................... 5.06%
3 George Freeman same ................... 5.06%
4. Emma Freeman, widow of M. C. Freeman, 5/216 .............................. 2.31%
5. Mary King inherited from her father 5/1188 0.42%
6. John W. Freeman same ................. 0.42%
7. Lucile Porter same ..................... 0.42%
8. Emma Freeman same ................... 0.42%
9. Julia Barlow same ..................... 0.42%
10. Vivian Freeman same ................... 0.42%
11. Martin Freeman same .................. 0.42%
12. Sarah Freeman same ................... 0.42%

Total .............................. 20.84%

The Special Referee and the Circuit Judge both held that the deed from John B. Wallace to Steven Quick conveyed the then present interest of John B. Wallace as an heir at law of his father Evander Wallace, Sr., and the interest which John B. Wallace inherited from his deceased sister Helena; and that the interest which he took as devisee under his mother's will, which included her original interest of one-third as heir at law of Evander Wallace, Sr., and the interest which she inherited from her deceased daughter Helena, vested in the children of John B. Wallace, the plaintiffs in this case. The correctness of this conclusion we consider the vital point in the case.

There appear to be two conditions under which a grantor who conveys an expectant interest will be estopped from disputing the title of his grantee: (1) Where the deed purports to convey the fee and contains a general warranty, as in *Gaffney v. Peeeler,* 21 S. C., 55; *Wingo v. Parker,* 19 S. C., 9; and (2) where he specifically conveys not only his present interest, but any interest which he may acquire in the future.

In 5 C. J., 858, it is said:

"In the United States the general rule is that an expectant heir may, in the life-time of his ancestor, sell, assign, or release his expectant interest in the estate of the latter, whatever it may turn out to be on his death, and a Court of equity will enforce the contract if it is shown to have been made in good faith and for a valuable consideration." (Citing very many cases.)

In *Blackwell v. Harrelson,* 99 S. C., 264, 84 S. E., 233, 234, Ann Cas., 1916-E., 1263, the Court said:

"It is no doubt true that authority may be found for the proposition that a sale by an expectant heir of an interest in land which he expects to inherit from a person then living is void as against public policy (*McCall v. Hampton,* 98 Ky., 166, 32 S. W., 406, 33 L. R. A., 266, 56 Am. St. Rep., 335), but no decision to that effect in this State has been called to my attention, and I think the weight of numerical authority as well as the better reasoning support the contrary view. See authorities discussed in note *Trull v. Eastman* [3 Metc. (Mass.) 121], 37 Am. Dec., 126; 4 Cyc., 15, and authorities cited. I am therefore of the opinion that the fact that Charles H. Harrelson at the date of his deed to Ella J. Harrelson was an expectant heir of the person in whose land he was purporting to convey an interest would not be sufficient to prevent the application of the rule of estoppel." (From circuit degree of Judge Spain, adopted by the Court.)

The question appears to be conclusively settled in
favor of the validity of the assignment of an expect-
ant interest in equity by the great authority of Story
and Pomeroy. See 3 Story Eq. Jur. (14th Ed.) § 1395, 3
Pom. Eq. Jur. (3d Ed.) §§ 1236, 1270, 1290. See also *Trull
v. Eastman*, 3 Metc. (Mass.) 121, 37 Am. Dec., 126, and
elaborate note of Judge Freeman: Notes: 17 A. L. R., 597,
44 A. L. R., 1465, 58 A. L. R., 339, 8 R. C. L., 1063.

This being unquestionably the law, the issue is presented
whether the grantor, John B. Wallace, has conveyed this
expectancy by his deed to Steven Quick of September, 1885,
a matter of legal construction.

The terms of the conveyance appear to leave no doubt up-
on the issue:

"All my right, title and interest of, in and to all that cer-
tain piece, 'parcel or tract of land  *  *  *  it being the
same tract of land heretofore conveyed  *  *  *  my in-
terest *now* being the share I am entitled to as an heir-at-law
of my father, the said Evander Wallace, deceased, *and any
other interest I may be entitled to by inheritance or other-
wise*. This deed is to take effect after the death of my
mother."

The use of the phrase "may be" is susceptible, gen-
erally speaking, of either a present or a future con-
struction, but, in connection with the previous phrase
"my interest *now*," there can be no doubt that the grantor
had in mind to convey not only his present interest, but such
interest as he might become entitled to at any time in the
future.

In the case of *Ex parte American Fertilizing Co.*, 122 S.
C., 177, 115 S. E., 236, 238, in the decree of Hon. L. D.
Lide, Special Judge, which was adopted as the opinion of the
Court, it was declared:

"In my opinion the words 'may be due,' contemplate fu-
ture indebtedness. The phrase has a prospective slant. The
use of the word 'due' does not necessarily imply that the debt

has already matured. It is often used by business men in the sense of 'owing irrespective of the time of payment.' Century Dictionary. In the case of *Shoemaker v. Smith*, 37 Ind., 128, the Court says: "The words 'may be' are peculiarly appropriate to express the future and not the past." In the case of *Griggs v. St. Paul*, 56 Minn., 150, 57 N. W., 461, a contractor drew an order on the city for a certain sum of money authorizing the deduction thereof 'from any money which may be due me on account of the grading of Park avenue.' The Court held that the words 'may be due' did not refer exclusively to what was presently due and payable at the date of the order, but also included moneys that might thereafter become due and payable under the contract. The Court said: 'The word 'may,' as here used, implies contingency, possibility, or probability and is broad enough to include whatever might become due and payable.' In *Brown v. Bachelor*, 1 H. & N. 264, a guaranty of 'any balance that may be due' was construed as referring to future as well as to past transactions."

It follows that Norman Quick is entitled to an interest of 79.16 per cent. in the proceeds of the sale for partition, and the Barrentine heirs 20.84 per cent.

The conclusions of the Special Referee confirmed by the decree, in reference to the right of the appellant Norman Quick to a trial by jury; the possession of the property of Mary Ann Wallace (English) and her husband; and the alleged agreement between Mary Ann Wallace (English) and the other heirs at law that her interest should be limited to a life estate, are approved.

In reference to the accountability of the estate of Mary Ann English for rents and profits for six years preceding her death, we are of opinion that the evidence everwhelmingly shows that no such charge was ever expected to be made against her therefor, and that there should be none against her estate.

There does not appear to be any exception to the report of the Special Referee upon the matter of the accountability of Norman Quick for rents and profits, and to that issue the decree confirming the report must be affirmed. In such accountability the defendant Quick will receive credit for such ratio of the amount for which he is held accountable as his interest herein determined indicates.

The judgment of this Court is that the decree be modified as herein indicated, and in other respects affirmed. The case will be remanded to the Circuit Court for further proceeding consistent herewith.

Note: Special Referee's report and circuit decree.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.