STATE, EX REL. DAVE ROWE ET AL., APPELLEES, V. JOSEPH
W. EMANUEL ET AL., APPELLANTS.

7 N. W. (2d) 156

FILED DECEMBER 23, 1942. No. 31468.

*William H. Lamme*, for appellants.

*W. J. Courtright, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This is a mandamus action and presents the question of
whether the word "may" as used in section 26-269, Comp.
St. 1929, imposes a mandatory duty or a discretionary au-
thority to act. The trial court held that the word was man-
datory. Respondents appeal. We affirm the decision of
the trial court.

The action grows out of the following situation. Dodge
county has been for many years organized into seven su-
pervisor districts. Five of those districts are entirely with-
out and two entirely within the city of Fremont. The 1940
federal census shows the population of the city of Fremont
to be over 49 per cent. of the total for the county as against
39 per cent. in 1910. At the general election in 1940 the
vote of the city of Fremont was over 49 per cent. of the
total vote of the county as against 34 per cent. at the time

of the adoption of the present district boundaries. Fremont, therefore, with a population of almost one-half of the county's total, elects but two of the seven supervisors. The plaintiffs called these matters to the attention of the defendants, as the board of supervisors, submitted a plan of redistricting that would have made the population of each district approximately the same and asked its adoption. The defendants, excepting Myron L. Bodell, voted against redistricting and have since refused to act. The relators, electors and taxpayers of Dodge county, sought an alternative writ of mandamus to compel the respondents, the members of the board of supervisors of the county, to redistrict the county "in compact" form in accordance with the law so that the population, as shown by the general election of 1940, may approach equal numbers in each supervisor district or to show cause. The relators do not seek the adoption of their plan by this action, but do seek a determination of the law and "to enforce" its obedience.

To this application the respondents demurred, contending that the petition did not state a cause of action. The demurrer was overruled.

The respondents then answered admitting the facts alleged in relators' application, and alleged that the city of Fremont was located in the southeast corner of the county, and stated that the county had 198 miles of county road, 279 miles of county drainage ditches, and 976 bridges and culverts across running streams; that each of the five districts outside the city of Fremont is compact in form, contains a somewhat equitable division of area, roads and bridges, that each supervisor has charge of the expenditure of money for roads and bridges in his district, superintends the same, makes purchases of equipment and employs labor; that to enlarge or change the present boundaries would make for inefficiency, increased expense and more difficult administration. They further assert that, even though there are fewer voters in the country districts, the needs of the people in the country districts are different from those in Fremont, and that supervisors residing in

the city may not readily respond to the needs of the people in the rural districts. The respondents further allege that the assessed valuation of the property within the city of Fremont is $7,976,225 and that of the balance of the county is $29,550,125. Respondents denied that it is their duty to redistrict, and allege that they had a right to and did exercise their discretion in refusing to redistrict.

To this answer the relators filed a motion for judgment on the pleadings. The trial court sustained the motion of relators and ordered the defendants to "proceed promptly in their official capacity to revise the supervisor districts of Dodge county so as to adjust them into seven supervisor districts, compact in form, making each district so far as reasonably possible as nearly equal in population as may be." Costs were taxed to the respondents other than Myron L. Bodell. From this order respondents appeal.

Stated briefly, the relators contend for supervisor districts containing substantially an equal number of people. The respondents contend that supervisor districts containing an unequal population may be maintained where the geography requires and business administration and needs may better be considered and served, and that tax revenues may be considered in determining whether or not to change existing boundaries of supervisor districts. Which position is sustained by law?

Section 26-269, Comp. St. 1929, provides as follows: "The supervisor districts may be changed after each state and federal census, if it shall appear from an examination of the number of votes in any district or districts that the inhabitants have become unequal among the several districts. Provided, in the event of any change or amendment of this act which may necessitate a change in the boundaries of such supervisor districts, or any one of them, then it shall be the duty of the county board to make such change in boundary at their next regular meeting after such change or amendment takes effect."

The above section must be considered in connection with other provisions of the same act. Section 26-204, Comp.

St. 1929, provides for the original division of a county into supervisor districts after the adoption of township organization. In the original act (Laws 1895, ch. 28, sec. 4) and in the above section it is provided that the districts shall be "divided as nearly as possible with regular boundary lines and in regular and compact form and shapes, and such districts shall as nearly as possible have the same number of inhabitants as any other district." Exact mathematical equality of population is not required, but "as nearly as possible" equal population is required. Section 26-206, Comp. St. 1929 (Laws 1895, ch. 28, sec. 6), provides for the counting of all the inhabitants of villages within a supervisor district. Section 26-267, Comp. St. 1929 (Laws 1895, ch. 28, sec. 71), provides a method for ascertaining the number of inhabitants in the several districts based upon the whole number of votes cast at the last preceding general election, and that "the supervisor districts shall be divided upon the foregoing basis and in accordance with the results thus obtained."

The legislature anticipated that changes in population might upset this approximate equality. It provided that the number of votes cast in a general election should determine the number of inhabitants in the various voting subdivisions of the county, and provided that redistricting should follow after each state and federal census if those figures established that there were an "unequal" number of inhabitants in the several supervisor districts. The legislature intended that the element of inhabitants alone should control. In redistricting, the requirements of approximately equal numbers in each district as provided in section 26-204, *supra*, should be met.

The admitted facts establish that the supervisor districts of Dodge county do not meet the legislative requirements of equal population, "as nearly as possible," and that redistricting is necessary to achieve that equality.

Did the legislature by the use of the word "may" in the original act (Laws 1895, ch. 28, sec. 72) and in section 26-269, *supra*, intend to leave compliance with the redistrict-

ing provision to the discretion of the board of supervisors, and to enable them to perpetuate the inequality, by asserting reasons for so doing which are outside the legislative basis of districting and redistricting?

The word "may," when used in a statute to delegate a power, the performance of which involves the protection of public or private interests, is mandatory, and it will be so construed whenever it becomes necessary to do so to carry out the legislative intent. *Mooney v. Drainage District*, 126 Neb. 219, 252 N. W. 910. That there is a public and private interest involved in this question is apparent. See *State v. Moorhead*, 99 Neb. 527, 156 N. W. 1067.

Here the legislature quite clearly has provided a method for securing and maintaining practical equality of population within the various supervisor districts. Here the respondents insist that they have a discretionary right to maintain practical inequality of population in supervisor districts with the result that fewer persons in number in some districts exercise the same power in the county government that is accorded to greater numbers in other districts. To sustain respondents' position would require us to hold that the legislature intended that there be practical equality of population when supervisor districts were organized, but that, if later inequalities of population developed, it would be discretionary with the county board to correct the situation or perpetuate the wrong. See *State v. Moorhead, supra*. We impute no such intent to the legislature. Rather it is clear that the legislative intent was to require and provide for periodic readjustments of the district boundaries to meet population changes.

The respondents rely upon the decisions of *Peterson v. Board of Supervisors*, 93 Cal. App. 490, 269 Pac. 743, and *Dozier v. Board of Supervisors*, 130 Cal. App. 746, 20 Pac. (2d) 726. There the statute provided: "The board of supervisors may, by a *two-thirds vote* of the members of said board, change the boundaries of any or all of the supervisor districts of a county. Said districts shall be as nearly equal in population as may be." The statute also vested

power in the board of supervisors "to divide the counties into townships, * * * supervisor, * * * and other districts required by law, change the same, and create others, *as convenience requires.*" (Italics ours.) There the court recognized the rule that "may" is to be construed as mandatory where "a positive duty," "a public duty," "the public interest," or "a matter of public policy" is involved or where the statute confers a power on a public officer for public purposes. The court held that the statute did not impose a positive duty to change the boundaries by reason of unequal population. The decision is based upon the statutory authority to change boundaries "as convenience requires," and also the provision requiring a two-thirds vote. The cases are not controlling in the instant case.

Respondents point out that sections 26-204, 26-206 and 26-269, *supra*, were amended by chapter 17, Laws 1917, and that in particular section 26-269, quoted above, was amended by adding the second sentence. The first sentence, as the act now is, says: "The supervisor districts *may* be changed," etc. The second sentence provides that in the event any amendment of the act "may necessitate a change in the boundaries * * * then it *shall* be the duty of the county board to make such change * * * at their next regular meeting," etc. From this situation respondents argue that the legislature intended the first authority to be permissive and the second mandatory. We are unable to see where the second sentence alters the construction of the first. The second sentence makes it mandatory to proceed, if the statutory conditions exist, "at their next regular meeting." The duty to change boundaries under the first sentence of the section remains the same.

Respondents argue that under section 26-265, Comp. St. 1929, the supervisors of country districts have special duties to perform, and that they are local as well as county officials, citing *Van Horn v. State,* 46 Neb. 62, 64 N. W. 365. Assuming this contention to be true, we see no application of it to the present problem. The supervisors have their statutory duties to perform. We can see no difference be-

tween districts as originally created and districts changed in compliance with the law, so far as the duties of the supervisor are concerned.

Respondents finally argue that the members of the board are best fitted to determine when the county should be redistricted for economical government, and that to place a larger number of supervisors in the city would place an unequal burden on the supervisors from the rural districts. To all of which the answer is that the legislature has said that such districts shall be divided as nearly as possible with regular boundary lines and in regular and compact form and shapes; and shall as nearly as possible have the same number of inhabitants. Section 26-204, *supra*. The duty is mandatory. The decree of the trial court requires that it be performed. The decree is affirmed.

AFFIRMED.