The BOARD OF EDUCATION OF the GRANITE SCHOOL DISTRICT, a body politic of the State of Utah, Plaintiff, Appellant and Cross-Respondent,

v.

SALT LAKE COUNTY, a body corporate and politic and Arthur Monson, Salt Lake County Treasurer, Defendant, Respondent and Cross-Appellant.

No. 17175.

Supreme Court of Utah.

Feb. 8, 1983.

M. Byron Fisher, Charles B. Casper, Salt Lake City, for Board of Educ.

Theodore L. Cannon, Bill Thomas Peters, John Avery, Salt Lake City, for Salt Lake County.

HOWE, Justice:

The Board of Education of the Granite School District (Granite) brought this action seeking damages from Salt Lake County (County) and Arthur Monson, Salt Lake County Treasurer, (Treasurer) alleging that they had failed to timely pay to Granite its share of property taxes which the Treasurer had collected. The Treasurer counterclaimed for costs (in excess of sums already paid by Granite) of collecting, apportioning, and distributing taxes on behalf of Granite. The district court denied relief to both parties. Granite appeals and the Treasurer cross-appeals from those denials.

The Treasurer collects taxes for 48 separate taxing entities located within Salt Lake County and then disburses the revenues to them. On behalf of Granite District he does so pursuant to U.C.A., 1953, § 59–10–66, which states in pertinent part:

It is the duty of the county treasurer to pay to the treasurer of each ..., school district ..., on the first day of each month, all moneys in his hands collected for and due such ... school [district] .... The county treasurer shall pay to the treasurer of each ... school district ... [its] proportionate share of delinquent taxes, interest, penalty and costs on all tax sales and redemptions therefrom, monthly, and shall make a final settlement ... on the last day of March of each year....

U.C.A., 1953, § 53–7–10 requires:

Such taxes shall be collected by the county officers as other taxes are collected and the county treasurer shall pay the same to the treasurer of said board within thirty days after it is collected, who shall hold the same subject to the order of the board of education.

Construed harmoniously these statutes require the Treasurer to pay collected funds to school districts within thirty (30) days of receipt and by the first of each month, and to make a final settlement on March 31 of each year. See *Osuala v. Aetna Life and Casualty,* Utah, 608 P.2d 242 (1980) which held that statutes should be harmonized in order to carry out the intent and purpose of the law. It is undisputed that the Treasurer failed to strictly comply with these statutes.

District Judge David K. Winder entered a partial summary judgment resolving the issue of liability in Granite's favor as a matter of law but reserving the issue of damages for trial. In the interim Granite amended its complaint to change its theory of recovery from one at law to unjust enrichment in equity. The parties agreed to this amendment and the Treasurer also proceeded in equity seeking recovery for unreimbursed collection costs based upon unjust enrichment.

At the trial, District Judge Jay E. Banks ruled that the Treasurer had "acted in good faith and in a reasonable manner with regard to the collection, apportionment and distribution of tax monies collected by him." The court also found that:

The Treasurer, by adopting a program of preliminary distribution to the various taxing entities as funds are cleared by his office [sic] has thereby substantially complied with his statutory duties governing such distribution.

The court further held that there was no evidence presented to show, and that Granite did not prove, how much money belonging to Granite was on deposit by the Treasurer on any given date during the time period complained of by Granite.

During the years in question the Treasurer had paid all interest earned on collected taxes on deposit to the County's general account. Nonetheless, the trial court determined that "Salt Lake County was not unjustly enriched at the expense of Granite School District through the actions of the Salt Lake County Treasurer." The trial court also concluded that Granite

was not unjustly enriched at the expense of Salt Lake County through the activi-

ties of the Salt Lake County Treasurer even though the evidence is uncontroverted that it costs more to assess, collect, apportion and distribute tax monies for Granite School District then [sic] is billed to and paid by Granite School District.

## PARTIAL SUMMARY JUDGMENT

■ Granite contends that Judge Banks' departure from Judge Winder's order of partial summary judgment constituted an appellate review of an interlocutory order which was clearly beyond his authority. However, revision of an adjudication that is not final may be appropriate. The question is under what circumstances revision is appropriate. See *Richardson v. Grand Central Corp.,* Utah, 572 P.2d 395 (1977), where with respect to conflicting rulings on pleadings in a somewhat analogous problem, this Court held that a ruling by one judge as to the sufficiency of the pleadings does not prevent another judge from considering the same question of law if it is properly raised on a subsequent motion which presents the case in a different light. See also *State ex rel. Stenberg v. Nelson,* 157 Mont. 310, 486 P.2d 870 (1971) where, after amendments to pleadings, filing of pretrial memoranda and a pretrial conference, a second judge severed an action into three separate trials even though the first judge, who had been disqualified, had ordered one trial. But see *Moore v. City of Las Vegas* 92 Nev. 402, 551 P.2d 244 (1976), where it was held that a second judge abused his discretion in overruling the first judge since the only feature which distinguished the motion for rehearing before the second judge from previous motions which had been denied was the citation of additional authority.

■ In this case, Judge Winder's order, being a partial summary judgment, was open to revision if changed circumstances would justify it. Therefore the controlling question is whether the fact that Granite changed its theory of recovery from one at law to one in equity constituted a different presentation of the issue of liability to Judge Banks. We hold that Granite's amendment to seek recovery on the basis of unjust enrichment had no significant effect upon the issue of liability since that issue depended solely upon an interpretation of the statutes in question regardless of the basis of recovery. Because the amendment did not affect the basic issue, the Treasurer's argument is unpersuasive that simply by virtue of its amendment, the complaint required that the whole case be considered anew—including the issue of liability. Consequently, it was error for Judge Banks to reconsider the issue of liability when it had been resolved previously and nothing intervened to present the issue to him in a different light.

## STATUTORY INTERPRETATION

■ Furthermore, Judge Banks' application of the "substantial compliance" rule outlined in *Kennecott Copper Corp. v. Salt Lake City,* Utah, 575 P.2d 705 (1978) to the Treasurer's practice in transferring collected school district revenues was also in error. Preliminarily, the fundamental consideration in interpreting statutes is legislative intent; and that is determined in light of the purpose the statute was designed to achieve. Intent is applied to carry out the purpose if it can be done in a manner which is consistent with the language of the statute. *Johnson v. State Tax Commission,* 17 Utah 2d 337, 411 P.2d 831 (1966). Quoting from 1A Sutherland Statutory Construction (4th Ed.) § 25.03, in *Kennecott,* 575 P.2d at 706 we noted:

> There is no universal rule by which directory provisions may, under all circumstances, be distinguished from those which are mandatory. *The intention of the legislature, however, should be controlling* and no formalistic rule of grammar or word form should stand in the way of carrying out legislative intent. [Emphasis added.]

> Generally those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of business, *and by failure to obey no prejudice will occur to those whose rights*

*are protected by the statute,* are not commonly considered mandatory, ... [T]he provision will not be considered mandatory if the purpose of the statute has been substantially complied with *and no substantial rights have been jeopardized.* [Emphasis added.]

■ Granite's receipt of revenues and the right to the use of those revenues are substantially delayed by the Treasurer's failure to observe § 59–10–66 and § 53–7–10. The purpose of these statutes is not merely the proper and orderly conduct of business. The rights of the school districts to receive the collected revenues are protected by the statutes; and, those rights are jeopardized when instead of distribution on a monthly basis or within thirty days of collection, over 98% of taxes are collected by November 30 of each year and the transfer practice has been in significant disharmony with the statutes.

The following offers an indication of the history of the Treasurer's transfer practice:

**1973 (Treasurer Lambourne)**

| Date Transferred | Amount Transferred |
| --- | --- |
| December 13, 1973 | $ 5,853,000.00 |
| January 2, 1974 | 140,000.00 |
| January 7, 1974 | 4,024,000.00 |
| February 1, 1974 | 1,646,000.00 |
| February 27, 1974 | 19,869.69 |
| May 28, 1974 | 2,066,886.32 |
| TOTAL | $13,749,756.01 |

**1974 (Treasurer Monson)**

| Date Transferred | Amount Transferred |
| --- | --- |
| December 2, 1974 | $ 142,000.00 |
| December 3, 1974 | 56,200.00 |
| December 16, 1974 | 2,900,000.00 |
| December 19, 1974 | 5,000,000.00 |
| January 9, 1975 | 3,000,000.00 |
| January 31, 1975 | 3,000,000.00 |
| June 12, 1975 | 1,224,128.14 |
| TOTAL | $15,322,328.14 |

**1975 (Treasurer Monson)**

| Date Transferred | Amount Transferred |
| --- | --- |
| December 2, 1975 | $ 1,561,453.00 |
| December 15, 1975 | 10,000,000.00 |
| January 5, 1976 | 3,015,643.00 |
| February 3, 1976 | 163,001.00 |
| March 31, 1976 | 1,876,367.51 |
| June 15, 1976 | 54,201.86 |
| December 17, 1976 | 16,018.38 |
| TOTAL | $16,686,684.75 |

**1976 (Treasurer Monson)**

| Date Transferred | Amount Transferred |
| --- | --- |
| December 7, 1976 | $ 1,767,700.00 |
| December 13, 1976 | 9,713,500.00 |
| December 17, 1976 | 384,963.33 |
| December 28, 1976 | 692,000.00 |
| January 4, 1977 | 252,000.00 |
| March 31, 1977 | 2,842,945.17 |
| TOTAL | $18,029,608.50 |

"Substantial compliance" is an appropriately employed rule where no prejudice occurs as a result of failure to follow the direction of the statute; and, generally a prescription of time within which public officers must act is directory only. *Sjostrom v. Bishop,* 15 Utah 2d 373, 393 P.2d 472 (1964); *Hamblin v. State Board of Land Commissions,* 55 Utah 402, 187 P. 178 (1919); *State ex rel. Wight v. Park City School District,* 43 Utah 61, 133 P. 128 (1913); *Tanner v. Nelson,* 25 Utah 226, 70 P. 984 (1902). But that is not the case here. Where from consideration of the whole statute and its nature or object it appears that the intent of the legislature was to impose a duty on a public officer rather than a discretionary power, even the word "may" has been held to be mandatory. *Fuller v. State,* 31 Ala.App. 324, 16 So.2d 428 (1944); *State ex rel. Rowe v. Emanuel,* 142 Neb. 583, 7 N.W.2d 156, (1942). In this case § 59–10–66 states that "[i]t is the *duty* of the county treasurer to pay to the treasurer of each . . . school district . . . on the first day of each month . . . [Emphasis supplied.]" This language, this statute's tax nature and the nature of § 53–7–10 as part of the Uniform School Fund legislation mandate a duty of the Treasurer to carry out the purposes of the timely distribution of revenues. In view of this and the prejudice that would otherwise result, the language of both of these statutes appears to be mandatory.

Language which further supports the conclusion that the directives of these statutes are mandatory is the term "shall" which appears throughout both provisions. While "shall" has been validly interpreted as directory (as in *Kennecott,* supra), it is usually presumed mandatory and has been interpreted as such previously in this and other jurisdictions. *Herr v. Salt Lake County,* Utah, 525 P.2d 728 (1974); *State v. Zeimer,* 10 Utah 2d 45, 347 P.2d 1111, 79 A.L.R.2d 821 (1960); *Swift v. Smith,* 119 Colo. 126, 201 P.2d 609 (1948). This Court assumes that the terms of a statute are used advisedly and should be given an interpretation and application which is in accord with their usually accepted meanings.

*Grant v. Utah State Land Board,* 26 Utah 2d 100, 485 P.2d 1035 (1971). See also *State v. Gates,* 118 Utah 182, 221 P.2d 878 (1950); *Miles v. Wells,* 22 Utah 55, 61 P. 534 (1900).

Because Granite is prejudiced by the Treasurer's failure to comply strictly with the terms of the statutes, because the legislature made it a duty of the Treasurer to pay revenues as prescribed, and since "shall", a word with a usually accepted mandatory connotation, has been used throughout the statutory provisions, the statutes in question must be interpreted strictly as they are plainly written. As a result, the Treasurer's failure to comply with the terms of the statutes makes him liable. Only by this construction is legislative intent followed to carry out the purposes of the statutes in a manner which is consistent with their language. Consequently Judge Banks' judgment resolving the issue of liability in the Treasurer's favor on the ground of "substantial compliance" was error.

## INTEREST ON REVENUES

Taxes and other revenue raised and apportioned for school purposes are regarded as trust funds. 79 C.J.S., § 412(a) at 279 (1952). Cf. *Board of Education v. Daines,* 50 Utah 97, 166 P. 977 (1917). The board or officers entitled to receive diverted revenues may recover them from the governmental body or officer which has received the funds or the benefit of them. 79 C.J.S., § 413(c) at 285 (1952). See generally 68 Am.Jur.2d, § 84 at 432 (1973). In *New Orleans v. Fisher,* 180 U.S. 185, 21 S.Ct. 347, 45 L.Ed. 485 (1901), a city was held liable for the amount of interest collected by it on school taxes it had collected but had delayed paying over. See also *City of Louisville v. Louisville School Board,* Ky., 32 S.W. 406 (1895) where a city was not discharged from paying over to the school board the entire amount collected in behalf of the school board despite the fact that the monies had been paid into a sinking fund.

In this case, the Treasurer held Granite's revenues in trust in the same way

he acts as a trustee in collecting revenues for other entities. The delay in transfer of Granite's revenues allowed the County to benefit from the interest earned on them since during the years in question the Treasurer paid all interest earned on them to the County's general account. In *New Orleans, supra*, where a city collected school taxes, the court quoted the Circuit Court of Appeals with approval stating:

> "Under the law, the school taxes carried ten per cent interest per annum from the day they became delinquent. It was a penalty for non-payment of the taxes. This interest, or penalty, for delayed payment of school taxes, formed no part of the city's proper revenues. The city in collecting the same was acting as a trustee for the school board. Delay in payment of taxes operated to the prejudice, not of the city, but of the school fund and its creditors. We are unable to find any authority in law or morals for the city to appropriate to itself this interest. To allow such an appropriation would be to reward the city for its own negligence in the collection of the taxes due the school fund. We fully agree with the master that 'the interest, as a mere accessory of the principal, belongs to the same person to whom the principal belongs.'" [Citations omitted.]

180 U.S. at 197, 21 S.Ct. at 352, 45 L.Ed. at 492. See also *Pomona City School District v. Payne*, 9 Cal.2d 510, 516, 50 P.2d 822, 825 (1935), where the court stated:

> It cannot be questioned that school funds as such remain the property of the school district, . . . No more, we believe, can the county, in the absence of clear statutory authority, assume to be the owner of the interest increments upon such funds. . . . The county is simply the agent of the school district, . . . it cannot allocate to itself, nor enrich its own coffers with, the interest increments upon the money placed in its custody . . .

Utah statutes do not address the subject of interest on school funds. However, a well established rule allows interest on overdue debts even where no statute so provides. *Wasatch Mining Co. v. Crescent Mining Company*, 7 Utah 8, 24 P. 586 (1890), aff'd. 151 U.S. 317, 14 S.Ct. 348, 38 L.Ed. 177 (1894); *Young v. Goodbe*, 82 U.S. 562, 566, 21 L.Ed. 250 (1873). Political subdivisions have not been exempted from this rule. *Baker Lumber Co. v. A.A. Clark Co.*, 53 Utah 336, 178 P. 764 (1919); *Wilson v. Salt Lake City*, 52 Utah 506, 174 P. 847 (1918).

 In view of the Treasurer's delay in transferring Granite's revenues, the allowing of interest on school funds by other jurisdictions and the accepted rule to allow interest on overdue debts, we conclude as Granite contends, that there are neither legitimate grounds in public policy nor in law for exempting Salt Lake County from paying interest on tax monies which were overdue Granite. This is not a case of the Treasurer's investment error, protected by bond or forfeiture of salary. Neither is this action barred by governmental immunity. Governmental immunity may not be used as a defense to equitable claims; nor, need a claim for damages first have been presented to the County for Granite to bring this action. *El Rancho Enterprises, Inc. v. Murray City Corp.*, Utah, 565 P.2d 778 (1977) and cases cited therein. Salt Lake County acquiesced in the receipt of the benefit of interest earned by the Treasurer's delayed appropriation of Granite's funds and must be held accountable for receipt of that benefit.

 However, the trial court found that there was no evidence presented to show, and that Granite did not prove, how much money belonging to Granite was on deposit by the Treasurer on any given date during the time period complained of by Granite. Nothing which has been argued dissuades us from relying upon these findings of the trial court. Granite's own witness merely deduced backwards from a year-end total to calculate deposit on any given date. This is insufficient data upon which to base a recovery. Consequently, Granite is precluded from the recovery of any interest monies earned on its collected revenues. Other questions pertaining to this issue are foreclosed.

Should the everyday exigencies in the Treasurer's office make compliance with the statutes involved here unworkable, then the legislature is the appropriate forum for the Treasurer to seek a change of the law to allow for the demands of his office. This Court will continue to exercise its authority to interpret the law; we refrain from assuming the legislature's task of writing it.

We make our decision prospective on the liability of the Treasurer for the payment of interest. Apparently his practice of delaying payment of taxes to the various entities is one of long-standing. Yet no one has heretofore challenged that practice in the courts. This is the first case to reach this Court on the subject. It may be extremely disruptive to county government to be suddenly subjected to liability for the payment of sizeable amounts of interest for which the county has not budgeted. In the end, it is the county taxpayers who will suffer the brunt of the Treasurer's omission. Justice will be best served by our giving our decision today prospective application only.

### COUNTERCLAIM

The Treasurer does not deny that Granite paid the expenses of collection required by statute; he simply argues that because it cost more to collect Granite's share of taxes than Granite paid, he should be allowed to recover the difference. The basis of his argument is that since Granite sought equity, it should be compelled to do equity.

 We have recognized the right of the Legislature to impose a duty upon city and county officers to collect taxes for purposes other than county purposes and to do so with or without compensation for the expenses incurred. *State Tax Comm'n. v. City of Logan,* 88 Utah 406, 54 P.2d 1197 (1936); *Best Foods, Inc. v. Christensen,* 75 Utah 392, 285 P. 1001 (1930); *Board of Education of Cache County School Dist., et*

*al. v. Daines,* supra. The legislature has specifically defined what tax collection expenses a county may pass through to a taxing entity in U.C.A., 1953, § 17–19–15 through § 17–19–17. It is reasonable that in enacting these statutory provisions the legislature advisedly limited the amount which school districts would be required to reimburse. It, therefore, was not error for Judge Banks to find that Granite was not unjustly enriched despite the fact that collecting and distributing tax monies for Granite exceeded the amount imposed by the statute and paid by Granite. An appeal to a maxim of equity cannot overcome the express provisions of our statutes on the subject. The trial court is affirmed on this point.

The case is remanded so that a judgment consistent with this opinion may be entered. Parties to stand their own costs.

STEWART, J., and VeNOY CHRISTOFFERSEN, District Judge, concur.

DURHAM, J., does not participate herein; CHRISTOFFERSEN, District Judge, sat.

OAKS, Justice (concurring and dissenting):

I concur in the opinion affirming the denial of relief on the County Treasurer's counterclaim for the excess expenses of collection. I also concur in those portions of the opinion concluding (1) that the County Treasurer had not substantially complied with the statutory requirements, (2) that the County Treasurer holds the taxes he collects and their earnings in trust for the entities for whom he collected them,[1] and (3) that governmental immunity is no defense to Granite School District's suit for relief in equity. I express no opinion on the appropriateness of the majority's applying its rule prospectively.

1. In addition to the reasons cited in Justice Howe's opinion, § 59–10–66's reference to moneys "collected for" the school districts and its command that the Treasurer pay the dis-

tricts their "proportionate share" and "make a final settlement" by a specified time confirm that the school districts own the collections and the Treasurer only holds them in trust.

I dissent from the denial of relief to Granite on its equitable claim.[2] The fact that Granite did not prove how much of its money the County Treasurer held on any given date is irrelevant. Granite made a prima facie showing that the County Treasurer had held some of its moneys in trust for periods exceeding the thirty-day statutory limit and had misappropriated the earnings obtained for those periods. This is evident from the fact that over 98% of taxes have been collected by November 30 of each year but considerably less than 98% of the taxes have been paid over by 30 days after that time. The beneficiary having made a prima facie showing of breach of trust, the *trustee* had the burden of accounting for its administration of the trust funds. By that means, the burden falls to the party in possession of the information, and all doubts will be resolved against it. These are well-settled principles of trust law. *E.g., Malcolmson v. Goodhue County National Bank,* 198 Minn. 562, 272 N.W. 157 (1936); G. Bogert, *Trusts & Trustees* § 972 (2d ed. 1962); *Restatement (Second) of Trusts* § 172 (1959). These principles should apply to all fiduciaries.

The County Treasurer is obliged to account to the Granite School District for all earnings it has obtained on tax funds held in trust for Granite beyond the statutory period.[3] This relief is essential to the integrity of legislative directions on how funds raised by various taxes shall be expended. I would therefore remand with instructions to enter a decree against the County and its Treasurer on the issue of liability and to proceed to an accounting to determine the amount of damages.

HALL, C.J., concurs in the concurring and dissenting opinion of OAKS, J.

**2.** I also dissent from the conclusion that Judge Banks could not reconsider the issue of partial liability. The plaintiff's substitution of equitable claims for legal ones surely offered a sufficient basis to reconsider the partial summary judgment on liability since such substitution changed the elements necessary for recovery.

**3.** Only if the funds were actually unproductive would the court apply the statutory or other theoretical rate of interest. In any case, the majority's references to "interest on overdue debts" are inapposite. Granite's suit in equity is based on ownership, not debt.