The BOARDS OF EDUCATION OF THE GRANITE, MURRAY CITY, JORDAN AND SALT LAKE CITY SCHOOL DISTRICTS, Plaintiffs and Appellants,

v.

SALT LAKE COUNTY COMMISSION, D. Michael Stewart, Bart Barker, M. Tom Shimizu, R. Milton Yorgason, Craig B. Sorensen, Arthur Monson, and John Does, Defendants and Respondents.

No. 19814.

Supreme Court of Utah.

Feb. 1, 1988.

M. Byron Fisher, Salt Lake City, for plaintiffs and appellants.

Bill Thomas Peters and David E. Yocom, Salt Lake City, for defendants and respondents.

ORME, Court of Appeals Judge:

Plaintiff school districts appeal a district court judgment that it was proper for the Salt Lake County Commission to appoint certain county employees involved in tax assessment, collection and distribution as "assistant county assessors" and then to apportion those employees' salaries to the various taxing entities within the County, including the school districts. Granite School District also appeals the district court's determination that the County is entitled to interest on delinquent reimbursement payments it made. We reverse and remand.[1]

---

1. Despite the divergence of views which this appeal has engendered, the instant opinion sets forth the Court's ruling. While Justices Hall and Zimmerman differ with the conclusion con-

## FACTUAL BACKGROUND

Utah Code Ann. §§ 17–19–15 and –16 (1973),[2] prior to 1985, authorized counties to charge taxing entities within counties a proportionate amount of the "salaries of the county assessor and his deputies and assistants."[3] In order to apportion to the taxing entities within Salt Lake County more of the costs of tax assessment and collection, on July 1, 1981, the Commission adopted Resolution No. 825, which, at the request of the Salt Lake County Assessor, appointed twenty-eight county employees in other departments as "assistant county assessors." Immediately thereafter, Salt Lake County began billing the school districts for a portion of the salaries of these twenty-eight employees. The employees worked in the County Recorder's office, the County Auditor's office and the County Data Processing office. The parties stipulated that the employees performed duties "functionally related to the assessment, collection, and distribution of taxes...."

The trial court determined that the Commission had the authority to appoint as assistant assessors any employees who were directly involved in tax assessment and collection. The court also held that Salt Lake County could collect interest from Granite School District on delinquent reimbursement payments from the date the County's counterclaim seeking such interest was filed.

The school districts claim that Salt Lake County was prohibited from apportioning to them the costs of the salaries of the employees in question because the salaries were not specifically budgeted to the County Assessor's office nor were the employees under the control of the County Assessor. Granite School District further argues that Salt Lake County cannot recover interest on late reimbursement payments because that would increase recoverable collection costs above those allowed by statute.

## VALIDITY OF "ASSISTANT ASSESSOR" DESIGNATION

■ This Court will only invalidate legislative action if it is outside the authority of the governing body or if it is such that it must be deemed arbitrary and capricious. *Triangle Oil, Inc. v. North Salt Lake,* 609 P.2d 1338, 1340 (Utah 1980); *Child v. City of Spanish Fork,* 538 P.2d 184, 186 (Utah 1975); *Cottonwood City Electors v. Salt Lake County Board of Commissioners,* 28 Utah 2d 121, 123, 499 P.2d 270, 272 (1972). The school districts have not challenged the action of the Commission in adopting Resolution No. 825 as being arbitrary and capricious; they do, however, argue that the Commission was without power to enact the resolution.

cerning interest, they concur in the balance of the opinion. Conversely, Justices Howe and Durham concur in the portion of the opinion which addresses the interest issue, but otherwise dissent. Accordingly, a majority of the Court has subscribed to the views expressed in this opinion.

2. Utah Code Ann. § 17–19–15 (1973) read as follows:

On the first Monday in June and December of each year the county auditor shall prepare a full and complete itemized statement, verified under oath, of all warrants drawn by him since the date of the last statement for the salaries of the county assessor and his deputies and assistants, for the costs of technical assistance and appraisal aid computed by the state tax commission as provided by sections 59–5–108 and 59–5–110 and for the salaries of the county treasurer and his deputies and assistants. Such statement shall set forth in detail the number of each warrant so drawn, the date of same, the name of the person or persons in whose favor drawn, and the nature of the services rendered.

Section 17–19–16 (1973) read in part as follows:

The county auditor shall thereupon apportion the total amount so ascertained among the several taxing funds or districts appearing on the tax rolls of the county, in the proportion that the total tax assessed to such taxing fund or district bears to the total taxes assessed on the entire roll of the county.

3. Effective April 29, 1985, the Utah Legislature amended § 17–19–15 to permit counties to do what Salt Lake County did in this case. *See* Utah Code Ann. § 17–19–15 (1973 & Supp.1985). Section 17–19–15 was again amended, and § 17–19–16 was repealed in 1986. *See* Utah Code Ann. §§ 17–19–15 & –16 (1986). Therefore, this appeal is limited to whether prior to April 29, 1985, the Commission had authority to apportion to the school districts the salaries in question.

The school districts argue that since the administrative practice prior to the adoption of Resolution No. 825 was to pass on only the salaries of actual employees of the assessor's office, the Commission could not change that practice without authorization from the Legislature. In support of this proposition, the school districts cite *Salt Lake City v. Salt Lake County*, 568 P.2d 738, 742 (Utah 1977), where we stated that "in case of any uncertainty or ambiguity in a statute, a reasonable administrative interpretation and practice should be given some weight." *Id.* at 741–42.

However, since §§ 17–19–15 and –16 unambiguously allow counties to apportion salaries of assistant assessors to other taxing entities within the counties and since all of the employees in this case were designated "assistant assessors," the school districts' argument must be that the employees were improperly appointed as assistant assessors.

Similarly, the statute that allows county officers to appoint deputies and assistants, Utah Code Ann. § 17–16–7 (1986), is also unambiguous. It does not require county officers to appoint as assistants only individuals who work specifically for the county officer or in that county office. Nevertheless, certain other procedures and prerequisites are contained in § 17–16–7 for the appointment of assistants, and those procedures and prerequisites are key to our decision.

**4.** Section 17–16–7 reads in relevant part as follows:

> Every county, precinct or district officer, except a county commissioner or a judicial officer, may, by and with the consent of the board of county commissioners, appoint as many deputies and assistants as may be necessary for the prompt and faithful discharge of the duties of his office.... The appointment of a deputy must be made in writing and filed in the office of the county clerk. Until such appointment is so made and filed and until such deputy shall have taken the oath of office, no one shall be or act as such deputy. Any officer appointing any deputy shall be liable for all official acts of such deputy.

**5.** The United States District Court for the District of Utah interpreted § 17–16–7 as only requiring that a county commission consent to the number of deputies or assistants and not to each

Section 17–16–7 allows county officers, with the consent of the board of county commissioners, to "appoint as many deputies and assistants as may be necessary for the prompt and faithful discharge of the duties of [the] office...." [4] A specific procedure, which must be strictly followed, is outlined for the selection of deputies. *See, e.g., Page v. McAfee*, 26 Utah 2d 208, 209, 487 P.2d 861, 862 (1971); *Sheriff of Salt Lake County v. Board of Commissioners*, 71 Utah 593, 597, 268 P. 783, 785 (1928). No procedures other than appointment by the county officer and consent of the board of commissioners are outlined for the appointment of assistants.[5] Salt Lake County followed these procedures in this case. The County Assessor asked that the employees be designated as assistant assessors, and the Commission consented via Resolution No. 825.

The question, then, is whether those employees appointed assistant assessors were "necessary for the prompt and faithful discharge of the duties" of the assessor's office as also required by § 17–16–7. The parties stipulated that all of the employees performed duties "functionally related to the assessment, collection, and distribution of taxes...." Clearly those employees who performed duties related to the assessment of taxes, even though they might be officed in, supervised by, and budgeted for in some other department, were properly appointed assistant assessors to the extent they performed assessment functions.[6]

individual so appointed. *Smith v. Hill*, 510 F.Supp. 767, 775 (D. Utah 1981). We express no opinion on the ruling in *Smith*.

**6.** Justices Howe and Durham believe our focus on function rather than formal organization flies in the face of the scheme adopted by the Legislature and violates Lincoln's maxim on the effect of labels.

We agree that calling an assistant recorder an assistant assessor does not make him or her one. It is precisely for that reason that we have premised our decision on substance and function rather than formality and titles. By the same token, a duly appointed assistant assessor is not rendered otherwise simply because he or she bears the label "assistant recorder."

While Lincoln's observation recounted in footnote 2 of Justice Howe's opinion is a valid generalization, Lincoln would not take excep-

However, a county assessor has no collection or distribution duties or powers. *See* Utah Code Ann. §§ 59–5–30 to –36 (1974 & Supp.1986). Collection and distribution responsibilities are fulfilled by county treasurers. *See* Utah Code Ann. §§ 17–24–1 to –21 (1987). Because of the clear language of § 17–16–7, a county assessor cannot appoint as an assistant a person who performs duties charged to the county treasurer or otherwise not integral to the assessor's responsibility.

Those employees who performed only collection and/or distribution functions were not, therefore, properly appointed as assistant assessors. These employees could conceivably have been appointed as "assistant treasurers," with the same practical effect under § 17–19–15, but the Salt Lake County treasurer took no part in their appointment. Because the power to appoint assistant treasurers is expressly given to the county treasurer and is incidental to that office, *see Fowler v. Gillman*, 76 Utah 414, 290 P. 358 (1930); *Sheriff of Salt Lake County v. Board of Commissioners*, 71 Utah 593, 597, 268 P. 783, 785 (1928), this Court cannot reclassify as assistant treasurers those employees designated "assistant assessors" who actually performed tax collection and distribution functions. Nor is the record sufficiently developed to permit us to determine which of them had an assessment function. Only such employees were properly appointed assistant assessors and only their salaries, to the extent allocable to assessment work, were properly passed on to the school districts and other taxing entities. Accordingly, we remand the case to the trial court to determine which of these twenty-eight employees actually performed assessment functions and to what extent they were involved in those functions.

### INTEREST

■ The final issue to be resolved is whether the County can collect interest from Granite School District for § 17–19–16 reimbursements paid delinquently. In *Board of Education v. Salt Lake County*, 659 P.2d 1030 (Utah 1983), we held that Salt Lake County was liable to Granite District for interest on tax monies that Salt Lake County held beyond the date on which it was required to distribute them to Granite, even though no statute provided for interest. We cited "a well established rule" of this jurisdiction that allows interest on overdue debts even where no statute so provides. *Id.* at 1036. The underlying policy for allowing interest on overdue payments is that, because of the delay, the debtor has the beneficial use of monies that do not belong to it, while the creditor is denied the beneficial use of those same monies to which it is legally entitled.

Granite argues that it cannot be required to pay interest on delinquent reimbursement payments because that would increase the costs that Salt Lake County can recover despite the fact that allowable costs are specifically defined and limited by statute. The argument, however, wrongly assumes that interest which would accumulate on recoverable costs somehow becomes an additional collection cost. To the contrary, interest merely reflects the time value of the monies lawfully due the County for performing the collection and related taxation functions. It is a cost imposed for the detention of the overdue reimbursement payments and not for the collection of taxes. Therefore, based on the principles discussed in *Board of Education*, which ought in fairness to be applied evenly, we hold that counties can recover interest on delinquent reimbursement payments.

■ Nevertheless, Granite argues that our holding, like our holding in *Board of Education*, should apply prospectively only since taxing entities have not been charged interest on delinquent reimbursement payments in the past. *See id.* at 1037. The point is well-taken.[7] If school districts

---

tion to calling a particular horse's tail a leg—if he became convinced its tail supported a portion of the horse's weight and was of material aid in locomotion.

7. Justice Zimmerman, in his separate opinion, observes that less "surprise" attends our decision today than might have met our decision in *Board of Education v. Salt Lake County*. How-

were suddenly liable for already accrued interest on delinquent reimbursement payments, money would have to be taken from already burdened school budgets to pay interest on delinquent payments that are currently outstanding. In the end, the state's public school pupils would bear the brunt of a retroactive application of this holding. Limiting our holding to a prospective application will allow Granite and other school districts to pay delinquent reimbursement payments currently outstanding and then modify their procedures so that in the future reimbursement payments do not become delinquent. Failing such modification, the districts will be on notice that late payments will accrue interest and that tardy payments will be made at their budgetary peril.

Accordingly, we reverse the district court's ruling and remand for further proceedings consistent with this opinion.

STEWART, Associate C.J., does not participate herein; ORME, Court of Appeals Judge, sat.

HOWE, Justice (concurring and dissenting):

I concur in that part of the majority opinion dealing with interest, but dissent from that portion which upholds the validity of the "assistant assessor" designation.

Since 1896, when Utah became a state, county officers have been and are three county commissioners, treasurer, sheriff, clerk, auditor, recorder, attorney, surveyor, and assessor. Utah Code Ann. § 17–16–2

(1987). However, the Board of County Commissioners is given the power to consolidate any of the above-mentioned offices. Utah Code Ann. § 17–16–3 (1987). When offices are consolidated, only one person is elected to fill the offices so consolidated. Then he or she must take the oath and give the bond required for and discharge all the duties pertaining to each office. This Court has held that in the absence of formal consolidation of two offices, they must be regarded as separate and distinct and cannot be held by one person. *State v. Woolfenden,* 26 Utah 167, 72 P. 690 (1903). County officers have always been elected in partisan elections.

Since territorial days, the duties of each county officer have been prescribed by statute in separate chapters of the Code. *See* Duties of County Assessor, § 17–17–1; County Attorney, § 17–18–1 to –4; County Auditor, § 17–19–1 to –28; County Clerk, § 17–20–1 to –5; Recorder, § 17–21–1 to –25; Sheriff, § 17–22–1 to –26; County Surveyor, § 17–23–1 to –11; County Treasurer, § 17–24–1 to –21. Each county officer is charged with and performs his or her own part of the operation of county government. The duties of various county officers complement each other, and their activities combine to make up the whole. While the division of duties and responsibilities of the various county officers contained in our statutes is not the only plan of division which could have been devised, it is the one that has existed for nearly a century in our state.

ever, our decision in that case by no means marked a truly dramatic change from prior doctrine. On the contrary, we referred there to "a well established rule" providing for "interest on overdue debts even where no statute so provides." 659 P.2d at 1036. We noted, "Political subdivisions have not been exempted from this rule." *Id.* Our decision as to prospectiveness in *Board of Education,* then, was not so much a result of our concern about surprise as it was a product of policy considerations. What we concluded there applies as fully to the instant case:

> We make our decision prospective on the liability of the Treasurer for the payment of interest. Apparently his practice of delaying payment of taxes to the various entities is one of longstanding. Yet no one has heretofore challenged that practice in the courts. This is

the first case to reach this Court on the subject. It may be extremely disruptive to county government to be suddenly subjected to liability for the payment of sizeable amounts of interest for which the county has not budgeted. In the end, it is the county taxpayers who will suffer the brunt of the Treasurer's omission. Justice will be best served by our giving our decision today prospective application only.

*Id.* at 1037. Moreover, prospectiveness provides a more symmetrical and, perhaps, fairer result. Last time the County benefitted at the expense of the school district by a decision of prospectiveness that was probably not strictly required. Today, the roles are merely reversed and the district benefits at the expense of the County.

By a further provision of our statutes, section 17–16–7 (enacted in 1896),[1] every county officer may appoint "as many deputies and assistants as may be necessary for the prompt and faithful discharge of the duties of *his office*," subject to the consent of the Board of County Commissioners. (Emphasis added.) Until the adoption of merit systems for county employees in recent years, it was a common occurrence for the deputies and assistants of an elected county officer to have their employment terminated when the officer was defeated at election. The victor who often belonged to a different political party then appointed his or her own deputies and assistants.

Just seven years after the legislature enacted section 17–16–7, authorizing each county officer to appoint "as many deputies and assistants as may be necessary for the prompt and faithful discharge of the duties of *his office*," the legislature in 1903 enacted sections 17–19–15 and –16 (then known as chapter 131, Laws of Utah 1903), directing that the "salaries of the county assessor and his deputies and assistants" and the "salaries of the county treasurer and his deputies and assistants" be apportioned among the various taxing entities within the county. It is significant that the legislature in this 1903 enactment in specifying whose salaries should be borne by the taxing entities used the precise terms that it had seven years earlier in authorizing county officers to appoint deputies and assistants. In each case, it was "his deputies and assistants"—not the deputies and assistants of other elected officers.

With that backdrop of how county government is structured and operates in Utah, and the use by the legislature of identical language in specifying the appointing powers of county officers and in apportioning salaries, I cannot join the long stretch made by the majority in construing the "deputies and assistants" of an elected assessor mentioned in sections 17–19–15 and –16 to include persons who are hired by, supervised by, and paid out of the budget of another elected county officer and who physically work in the office of the latter. Such a construction subverts the plain meaning of that statute. The majority opinion seeks to justify its result because employees in the recorder's office perform work which is "functionally related" to the work and duties of the assessor. Of course, that is true. The county surveyor serves the county commission in laying out roads. Their work, too, is functionally related. Many other examples could be given. All the work conducted in the various county offices complements work in other offices. It has never been claimed that the work of the county officers has been divided according to strict logical or functional lines. It is, however, the division made by the legislature of this state and territory and which has existed for at least one hundred years. If a different division should be made, the legislature, not the county commission or the courts, should do it.

For seventy-eight years following the enactment of section 17–19–15, the Salt Lake County Assessor observed the clear meaning of that statute and apportioned to the taxing entities in Salt Lake County only the salaries of the assessor and the treasurer and the deputies and assistants who were hired by them, supervised by them, and paid out of the budget of their offices. However, in 1981, a committee which had been appointed by the Salt Lake County Commission to find additional sources of revenue for the county suggested that the salaries of other county employees should be apportioned to and borne by the taxing entities. Instead of going to the legislature and having the change made in the statute, the Salt Lake County Commission bypassed that process and instead had the county assessor designate twenty-eight county employees who worked in the offices of other elected officials as "his assistants."

We have heretofore recognized past administrative practice as a basis for statutory interpretation. In *Salt Lake City v. Salt Lake County*, 568 P.2d 738 (Utah 1977), a Salt Lake County clerk and sheriff initiated a policy of charging Salt Lake City

1. *See* § 546 C.L. 1907.

fees for the filing of suits and the service of process. The relevant statute was ambiguous as to the legality of this policy. This Court, basing its decision in part on the long-standing administrative practice of the clerk and the sheriff under which no fees were charged, said, "[I]n case of any uncertainty or ambiguity in the statute, a reasonable administrative interpretation and practice should be given some weight." *Id.* at 741–42. This is particularly true when such an administrative interpretation and practice has persisted for a long time without any legislative correction or change. It is significant that in 1970, section 17–19–15 was amended to provide that the "costs of technical assistants and appraisal aid computed by the State Tax Commission" should also be apportioned to the various tax entities in the county. No enlargement, however, was made to the language in the 1903 enactment respecting the salaries of the county assessor and "his deputies and assistants" and the salaries of the county treasurer and "his deputies and assistants." We noted in *Board of Education of Granite School District v. Salt Lake County*, 659 P.2d 1030 (Utah 1983), that sections 17–19–15 and –16 may not be broad enough by their terms to allow a county to collect from the taxing entities the full cost of its expenses of assessment and collection. We eschewed the invitation of Salt Lake County to go beyond the plain terms of the statute and add additional costs as a matter of equity. We observed that "the legislature has specifically defined what tax collection expenses the county may pass through to a taxing entity in [Utah Code Ann. §§ 17–19–15 through –17 (1953)]. It is reasonable that in enacting these statutory provisions, the legislature advisedly limited the amount which school districts would be required to reimburse." *Id.* at 1037.

The "assistant assessor" designation made here is flagrantly egregious because it flies in the face of the statutory responsibilities of the elected officers who hired, supervised, and paid the "assistant assessors." For example, twelve of the twenty-eight "assistant assessors" were employees of the recorder, working in the plat department. Their responsibility was to maintain and keep current on a day-to-day basis all new subdivision dedications, all conveyances of title, and the change of ownership and legal description of all real property within the county. In other words, these plats reflect the current ownership, size, and dimensions of each parcel of real property. The maintenance of these plats, however, has been expressly designated by the legislature by statute as the duty of the recorder, not the assessor. Utah Code Ann. § 17–21–21 (1987), provides:

> In all counties the County Recorder shall prepare and keep present-ownership maps and plats drawn to a convenient scale, which shall at all times show the record owners of each tract of land in the county, together with the description of the tract.

Section 17–21–22 provides that each year the recorder shall prepare copies of said ownership, maps, plats, and descriptions, showing record owners at noon on the 1st day of January and transmit those copies to the county assessor. The assessor compiles the property tax notices based on those maps and plats. Thus, the very tasks performed by employees of the recorder which were relied upon by the Salt Lake County Commission and which are now relied upon by the majority of this Court to make them "assistant assessors" are in fact statutory duties of the recorder. When the legislature has by statute assigned certain duties to the recorder, the County Commission cannot by resolution nor can this Court by judicial fiat make persons who perform those tasks in that office the "assistant" of any other elected official. The majority recognizes this principle in disallowing employees of the treasurer to be designated "assistant assessors." It fails, however, to extend the principle to the recorder's employees.

Moreover, the maps and plats made by the recorder are not just used by the assessor. Testimony was adduced that they are available to members of the general public and are used extensively by departments of the incorporated cities within the county, the county surveyor, the county highway

department, title insurance companies, abstractors, and real estate brokers and salesmen.

In sum, I cannot join in giving judicial approbation to a revenue-grabbing ruse which ignores the separate statutory duties and responsibilities of the various county officers and which sanctions a county resolution creating "assistant assessors" out of persons hired by, supervised by, and paid out of the budget of other elected county officers.[2] Had the legislature intended the broad construction given by the majority to sections 17–19–15 and –16, it could have so stated by encompassing all persons in county government whose employment duties are functionally related to the assessment and collection of taxes. But the legislature did not do so, and for seventy-eight years, no one apparently had any question as to the meaning of the statute.

DURHAM, J., concurs in the concurring and dissenting opinion of HOWE, J.

ZIMMERMAN, Justice (concurring and dissenting):

I concur in that portion of the majority opinion which remands the case for further factual determination. I also concur in that portion which holds that a school district may be liable to the county for interest on delinquently paid reimbursements. However, I dissent from the majority's holding that this ruling on interest should be prospective.

In *Board of Education v. Salt Lake County*, 659 P.2d 1030, 1037 (Utah 1983), three members of this Court did make prospective a ruling that Salt Lake County would be liable to Granite School District for interest on tax monies held beyond the date when they were to be paid over to the district. As I read that case, a large part of the justification for the prospectivity ruling was the fact that the County's practice was long-standing and that it would have been unreasonable to expect the County to have anticipated the adverse ruling in *Board of Education.* In the present case, I do not find the equities to be nearly as strong in favor of the districts. If there had been any doubt as to the liability of one governmental entity for interest on revenues delinquently paid to another governmental entity, our decision in *Board of Education v. Salt Lake County* disposed of that issue. Therefore, the school districts cannot claim any surprise at our holding today. In the absence of surprise, I can find no justification for making our decision on the interest issue prospective. Admittedly, school districts can always use additional revenue or the forgiveness of an accrued debt. However, that fact is not enough to justify our creating an ad hoc preference in this case.

HALL, C.J., concurs in the concurring and dissenting opinion of ZIMMERMAN, J.

---

2. The writer is reminded of Lincoln's observation that calling a horse's tail a leg does not make it a leg.